**In re Richard H. ZOLLER, District Justice In and For Magisterial District 05–4–02 Allegheny County.**

**No. 3 JD 00.**

Court of Judicial Discipline of Pennsylvania.

Dec. 19, 2001.

Order Jan. 24, 2002.

Before: RUSSO, President Judge, SPOSATO, LEADBETTER, COGNETTI, HORGOS, and O'LEARY, JJ.

COGNETTI, Judge.

**I. INTRODUCTION**

The Judicial Conduct Board (Board) filed a Complaint with this Court against District Justice Richard H. Zoller (Respondent) consisting of three counts which charge Respondent with:

1. violation of Rule 4C of the Rules Governing Standards of Conduct of District Justices (Count 1),

2. violation of Article V, § 17(b) of the Pennsylvania Constitution (Count 2), and

3. conduct which brings the judicial office into disrepute in violation of Article V, § 18(d)(1) of the Pennsylvania Constitution (Count 3). ·

These charges arise from Respondent's conduct during and after a preliminary arraignment which took place in "night court" at the Municipal Court Building,

Pittsburgh, Pennsylvania on March 1, 2000. The Board and the Respondent have submitted stipulations of fact as to some of the issues in the case under C.J.D.R.P. No. 502(D)(2). The Court accepted these stipulations of fact (nine in number) and proceeded to trial on the unresolved issues. The Court now makes the following findings of fact—findings 1–9 being stipulated by the parties, and findings 10–13 being made by the Court after trial.

## II. FINDINGS OF FACT

1. The Judicial Conduct Board (hereinafter referred to as the "Board") is empowered by Article V, § 18 of the Constitution of the Commonwealth of Pennsylvania to file formal charges alleging ethical misconduct on the part of judges, justices or justices of the peace and to present the case in support of the formal charges before the Court of Judicial Discipline.

2. District Justice Richard H. Zoller (hereinafter referred to as "Respondent") is a duly elected district justice serving Magisterial District 05–4–02. Magisterial District 05–4–02 encompasses the Boroughs of Oakmont and Verona, in Allegheny County.

3. Respondent commenced his judicial service in January 1988 and he continues to serve as a district justice.

4. On or about March 1, 2000, Respondent had served as the duty district justice at a session of night court in the Municipal Court Building in the City of Pittsburgh.

5. At or about 9:30 p.m. on March 1, 2000, Constable William Hugus and Deputy Constable Russell Roach had Michael March in custody and brought March to night court for purposes of arraignment on warrants for bad check charges.

6. Hugus and Roach brought March into the main courtroom and March was arraigned by the Respondent.

7. The said arraignment was a court proceeding and open to members of the public.

8. Respondent was displeased with being required to arraign March on summary charges.

9. In particular, the Respondent made some or all of the following comments:

"This is absolutely fucking bullshit. This paperwork is all screwed up."

"This whole thing is fucking ridiculous. I haven't even gotten a chance to eat my fucking dinner yet. This is absolute bullshit."

"This is bullshit, the only reason you are bringing him here is to make money."

10. The first two of the comments set out in Stipulation 9—if not in that precise language, in language very similar—were made from the bench during the preliminary arraignment.

11. Said comments were made in the presence of Constables William Hugus and Russell Roach, the defendant, Michael March, and Deputy Sheriff, Millie Oles.

12. During the course of the hearing Respondent stood up and threw his pen down on the bench.

13. During the course of the preliminary arraignment Respondent was angry, agitated, loud and confrontational.

## III. DISCUSSION

We find that Respondent's conduct at the preliminary arraignment on March 1, 2000 constituted a violation of Rule 4C of the Rules Governing Standards of Conduct of District Justices (Count 1), which finding occasions the automatic, derivative finding of a violation of Article V, § 17(b) of the Pennsylvania Constitution (Count 2),

and we find that the conduct was such that brings the judicial office into disrepute (Count 3). We will discuss these conclusions in the order mentioned.

**COUNT 1.** Violation of Rule 4C.

Rule 4C provides:

A district justice shall be patient, dignified and courteous to litigants, witnesses, lawyers and others with whom he deals in his official capacity, and shall require similar conduct of lawyers, of his staff and others subject to his direction and control.

■ We note that the Rule requires patience, dignity and courtesy by a district justice to all those "with whom he deals in his official capacity"—the Rule does not limit its requirements to "on bench" conduct; so long as the district justice is acting in his "official capacity" the Rule applies. One thing is clear and undisputed in this case, and that is that Respondent's use of the language which it is stipulated he used constitutes a violation of Rule 4C whether these outbursts came during or after the hearing, inasmuch as, in either case, he was acting in his official capacity. Essentially, Respondent admits this violation; however, in keeping with our obligation, and, as we have done in other cases,[1] we make the independent finding that Respondent's conduct constitutes a violation of Rule 4C.

We point out that our conclusions in cases where violation of Rule 4C is charged are reached only after full recognition and consideration that all judges do not come to their office with the same ration of equanimity: some are, by nature, sharp—others, smooth, some entirely comfortable that their level of intellectual grasp equips them to deal with all matters—others, wary in that regard, and some have a lower threshold of intolerance than others; but, whatever their idiosyncratic predispositions, in the conduct of their judicial duties there is no place for discourtesy.

**COUNT 2.** Violation of Article V, § 17(b) of the Pennsylvania Constitution in that he has engaged in conduct in violation of Rule 4C of the Rules Governing Standards of Conduct of District Justices.

Section 17(b) of Article V of the Pennsylvania Constitution provides:

Justices and judges shall not engage in any activity prohibited by law and shall not violate any canon of legal or judicial ethics prescribed by the Supreme Court. Justices of the peace shall be governed by rules or canons which shall be prescribed by the Supreme Court.

■ Having found that Respondent has violated Rule 4C of the Rules Governing Standards of Conduct of District Justices, which Rules were prescribed by the Supreme Court, a violation of § 17(b) is derivative and automatic. As we said in *In re Joyce and Terrick,* 712 A.2d 834, 845 (Pa.Ct.Jud.Disc.1998):

Though the sentence referring to justices of the peace [in § 17(b)] says they "shall be governed by [The Rules Governing Standards of Conduct for District Justices]" but does not specifically say "shall not violate [those Rules]," in the context of § 17(b) the phrases mean the same, and the inclusion of the second sentence was intended to make a violation of the District Justices' Code a violation of the Constitution just as a violation of the Judicial Code is made a violation of the Constitution by the first sentence. Otherwise, there was no purpose in including the second sentence and its injunction would have no mean-

---

**1.** See, *Strock,* 727 A.2d 653 (Pa.Ct.Jud.Disc. 1998) and *In re Crahalla,* 747 A.2d 980 (Pa.Ct. Jud.Disc.2000), *aff'd,* —— Pa. ——, 792 A.2d 1244, (Pa. 2000).

ing or application—a violation of elementary principles of statutory interpretation.

**COUNT 3.** Conduct which brings the judicial office into disrepute.

It is stipulated that Respondent made "some or all" of the comments set out in Finding of Fact No. 9 in his courtroom on the night of March 1, 2000. This is the equivalent of an agreement that Respondent made "all" of the said comments. We so find. The only issues remaining are:

1. Were the comments made during the hearing?

2. Who was present?

As to the first question, we find that the first two remarks, *viz.*, "This is absolutely fucking bullshit," and "This whole thing is fucking ridiculous. I haven't even gotten a chance to eat my fucking dinner yet. This is absolute bullshit," were made during the course of the preliminary arraignment from the bench. As to the third comment, "This is bullshit, the only reason you are bringing him here is to make money," though no doubt made in the courtroom that evening, we find that the Board has failed to establish by clear and convincing evidence that it was made during the hearing or from the bench.[2]

Four witnesses gave testimony on the timing of Respondent's exceptionable remarks. Both Constable Hugus and Constable Roach are clear in their testimony that the first two comments were made by Respondent during the hearing and from the bench. (N.T. 17–20 (Hugus)), (N.T. 37–40 and 41–42 (Roach)). Respondent testified that some of the comments were made only after the hearing was over—albeit in the courtroom. However, even

Respondent admitted in his testimony that he used language contained in the Complaint from the bench during the course of the preliminary arraignment. (N.T. 79–81). Deputy Sheriff, Millie Oles, who was in the courtroom during these proceedings, gave definitive testimony only that Respondent was "upset" during this hearing (N.T. 92), that he used the word "fuck" but couldn't remember "whether it was when he was on the bench or if he was back in the hallway" (N.T. 92) and can't remember in what context he used the word (N.T. 94–95). We believe the testimony of Deputy Oles and the Respondent give credence to the testimony of Hugus and Roach as to what Respondent said and where and support our conclusions thereupon.

As to the question of who was present, it is undisputed that Constables Hugus and Roach were present as well as Deputy Sheriff Oles, the defendant, and the Respondent. It is possible that an unidentified "bail clerk" was present during the early part of the hearing (N.T. 17–18, 37–38), and that four or five members of the public were present (N.T. 14, 35) but this was not established by clear and convincing evidence.

We now address the question of whether Respondent's conduct on this occasion constitutes conduct such that "brings the judicial office into disrepute" as intended by the Pennsylvania Constitution, Article V, § 18(d)(1). In doing so, we turn to two cases earlier decided by this Court.

In the first of those cases, *In re Smith*, 687 A.2d 1229 (Pa.Ct.Jud.Disc.1996) this Court observed that:

> It cannot be presumed that a violation of any other provision, constitutional, canonical, or criminal automatically lowers

2. While this may be a fine line we draw here, and may make little or no difference in a final analysis, we wish to be precise on what we find was established and what it is upon which we base our conclusion in this case.

public acceptance of the authority of the judicial office.

*Id.* at 1238, and stated that:

"Disrepute" necessarily incorporates some standard with regard to the reasonable expectations of the public of a judicial officer's conduct.

*Id.* at 1239.

This Court also held in *Smith* that:

To sustain a charge under this Section, the Board must make a persuasive showing that (1) the judicial officer has engaged in conduct which is so extreme that (2) it has resulted in bringing the judicial office into disrepute.

*Id.* at 1238.

In the other case, *In re Cicchetti,* 697 A.2d 297 (Pa.Ct.Jud.Disc.1997), *aff'd,* 560 Pa. 183, 743 A.2d 431 (2000), this Court held that:

The determination of whether particular conduct has brought the judicial office into disrepute, of necessity, is a determination which must be made on a case by case basis as the particular conduct in each case is scrutinized and weighed.

*Id.* at 312. This approach to the determination of "disrepute" cases was specifically approved by our Supreme Court in its affirmation of this Court's opinion in *In re Cicchetti,* 560 Pa. at 206, 743 A.2d at 444.

■ Following this approach then, we scrutinize and weigh the particular conduct in this case and conclude that it is such that brings the judicial office into disrepute.

The Constitution specifies that a judicial officer is subject to discipline for conduct which brings the judicial office into disrepute, "whether or not the conduct occurred while acting in a judicial capacity" thus recognizing that a judge's ability to tarnish the judicial system accompanies him wherever he goes. Cases of "off-bench" conduct call for analysis suited for those particular "off-bench" circumstances. However, we do not decide such a case here, and how the conduct of this Respondent might be viewed if taking place in chambers, in a courthouse corridor, in a barroom or on the street, is irrelevant. What we do decide is that once a judge ascends the bench—and we use that verb deliberately for its symbolism—he there acts as the official representative—as the symbol—of our judicial system, thereby heightening the concomitant potential for injury to the judicial office itself, and the standard by which his conduct is measured is necessarily correspondingly elevated as well.

Applying, then, that standard, we find that Respondent's language, intemperate, uncivil and crude as it was, and occurring, as it did, in the courtroom during a judicial proceeding, totally uncalled for and indefensible, and disrespectful, not only to those to whom it was addressed and to those others who were present, but to the judicial office itself, and so extreme as to bring the judicial office into disrepute.[3] We believe that it is beyond dispute or debate that the expectations of the public include the expectation that the business of its government's judicial system will be

---

**3.** We note that the dissenting opinion refers to the decision of this Court in *In re Cicchetti, supra,* to support the idea that there must be a "pattern" of similar behavior—a "course of conduct"—in order for any given conduct to match the constitutional meaning of "conduct which brings the judicial office into disrepute." It is sufficient to point out that while Cicchetti's behavior happened to be persistent—and while that was a factor in the determination that *his* conduct was such that brought the judicial office into disrepute—that does not translate into a holding that conduct must, in every case, be persistent or repetitive in order to be such that brings the office into disrepute.

conducted in a place where dignity and grace are not strangers and where ordinary good manners are not excluded.[4]

## IV. CONCLUSIONS OF LAW

1. The Respondent's conduct at the preliminary arraignment of Michael March on March 1, 2000 in the Municipal Court Building, Pittsburgh, Pennsylvania, constitutes a violation of Rule 4C of the Rules Governing Standards of Conduct of District Justices (Count 1).

2. Respondent's conduct in violation of Rule 4C constitutes a violation of Article V, § 17(b) of the Pennsylvania Constitution (Count 2).

3. Respondent's conduct was such that brings the judicial office into disrepute (Count 3).

4. The Respondent is subject to discipline under Article V, § 18(d)(1) of the Pennsylvania Constitution.

## ORDER

PER CURIAM:

AND NOW, this 19th day of December, 2001, based upon the Conclusions of Law, it is hereby ORDERED:

That, pursuant to C.J.D.R.P. No. 503, the attached Opinion with Findings of Fact and Conclusions of Law be and it is hereby filed, and shall be served on the Judicial Conduct Board and upon the Respondent,

That, either party may file written objections to the Court's Findings of Fact and Conclusions of Law within ten (10) days of this Order. Said objections shall include the basis therefor and shall be served on the opposing party,

That, in the event that such objections are filed, the Court shall determine whether to entertain oral argument upon the objections, and, if so, issue an Order setting a date for such oral argument, and

That, in the event objections are not filed, the Findings of Fact and Conclusions of Law shall become final, and this Court will issue an Order setting a date, pursuant to C.J.D.R.P. No. 504, for a hearing on the issue of sanctions.

HORGOS, J. and RUSSO, President Judge, join in this opinion with respect to Counts 1 and 2 and dissent with respect to Count 3.

HORGOS, J., files a dissenting opinion with respect to Count 3 in which RUSSO, President Judge, joins.

HORGOS, J., dissenting with respect to Count 3 in which RUSSO, President Judge, joins.

While I join in the opinion of the majority of the Court respecting Counts 1 and 2, I dissent from the conclusion of the majority respecting Count 3 for I do not believe the Board has established that Respondent's conduct is such that brings the judicial office into disrepute.

Count 3 of the Board's Complaint charges Respondent with conduct which brings the judicial office into disrepute in violation of Article V, § 18(d)(1) of the Pennsylvania Constitution. It is stipulated

---

**4.** The dissenting opinion refers to *dicta In re Smith, supra*, to justify the employment of a subjective approach to the assessment of the "badness" of the language or behavior in a case. This approach would have us engage in a virtual poll of those who happened to be present, or within earshot, to determine whether they were offended or not. We think that to state the proposition is to demonstrate that in determining what are "the reasonable expectations of the public," see *Smith*, at 1238, an objective standard is certainly preferable and, we believe, demanded.

that Respondent made "some or all" of the comments set out in Finding of Fact No. 9. I agree with the finding of the majority that this is the equivalent of an agreement that Respondent made "all" of the said comments.

Section 18(d)(1) provides for discipline for "conduct which brings the judicial office into disrepute whether or not the conduct occurred while acting in a judicial capacity or is prohibited by law." The determination of whether a judicial officer's conduct brings the judicial office into disrepute is a factual one that is decided on a case-by-case basis. *In re Cicchetti*, 697 A.2d 297 (Pa.Ct.Jud.Disc.1997), *aff'd*, 560 Pa. 183, 743 A.2d 431 (2000). To sustain such a charge, the Board must show that (1) the judicial officer has engaged in conduct which is so extreme that (2) it has resulted in bringing the judicial office into disrepute. *In re Smith*, 687 A.2d 1229 (Pa.Ct.Jud.Disc.1996).

In *Cicchetti, supra*, the Court of Judicial Discipline found and the Pennsylvania Supreme Court affirmed that the judge's pattern of sexual advances to a subordinate was "so persistent, so coercive, and so extreme" that disrepute was brought upon the judicial office itself. *Id.* 560 Pa. at 206, 743 A.2d at 444. Similarly in *In re Strock*, 727 A.2d 653 (Pa.Ct.Jud.Disc.1998), this Court found that during an 18 month period, a district justice personally used cash, checks and money orders which were public funds received in her office. The Court found that this conduct brought the office into disrepute.

The seriousness of Respondent's conduct cannot be minimized and Respondent has expressed his regret. It has not been alleged, however, that Respondent's use of inappropriate language has ever been a course of conduct or even occurred at any other time during his term of office.

As the Court of Judicial Discipline observed in *In re Smith, supra:*

> Even if a judicial officer's actions could reasonably result in a lessening of respect for that judge, it cannot be assumed that the same actions would necessarily bring the judicial office itself into disrepute. In other words, one [some] might say "Judge Smith has failed to decide his cases, and therefore he has lost our respect." Such a finding would not sustain the Board's burden, for the Board must show that the disrespect arising from Judge Smith's actions extends to all judges. In other words, that the wrongful actions of a judicial officer are capable of bringing the judicial office into disrepute is only the first step of the inquiry. The second step is that, in fact, universal disrepute resulted.

*In re Smith, id.* at 1239.

Here, the Deputy Sheriff who was present during the relevant sequence of events testified that she heard Respondent utter a profanity once and it did not offend her (N.T. 91, 93). There was not sufficient evidence to establish that anyone except Respondent, the two Constables, the Deputy Sheriff and the Defendant were present. There were no members of the public present.

The instant matter fits squarely within the example used by this Court in *Smith, id.* It is a case in which Constables Hugus and Roach might well say: "Respondent was angry and impolite and used vulgar language; he has lost our respect." As the Court pointed out in *Smith, id.*, such a finding would not sustain the Board's burden because the Board must show that the disrespect arising from the Respondent's conduct extends to all judicial officers.

The Court of Judicial Discipline has specifically stated:

In order for the Board to establish a violation of this provision [Article V, § 18(d)(1)] of the Constitution, the Board must demonstrate a specific act or series of acts, by a judge, which result in a decline of public esteem for the judicial office.

It cannot be presumed that a violation of any other provision, constitutional, canonical, or criminal automatically lowers public acceptance of the authority of the judicial office.

*In re Smith, id.* at 1238.

Thus, while this Court finds that in this isolated incident, the Respondent was not patient, dignified and courteous to the two Constables with whom he dealt in his official capacity, there is no presumption that the Respondent's conduct brought the judicial office into disrepute. Our finding that the Respondent's violation of Rule 4C of the Rules Governing Standards of Conduct of District Justices does not in any way lead to a presumption of a violation of Article V, § 18(d)(1) of the Pennsylvania Constitution.

There is insufficient evidence on this record to support the conclusion that the Respondent engaged in conduct which brings the judicial office into disrepute in violation of the Pennsylvania Constitution, Article V, § 18(d)(1).

Accordingly, I would dismiss Count 3 of the Board's Complaint.

RUSSO, President Judge, joins in this opinion.

## ORDER

PER CURIAM:

AND NOW, this 24th day of January, 2002, after the Sanction Hearing conducted on January 23, 2002, it is ORDERED that Respondent remain under appropriate medical supervision and it is further ORDERED that this matter be and it hereby is concluded and ended.