**In re Jeffrey Alan SMITH, Judge of the Court of Common Pleas Forty–Second Judicial District, Bradford County.**

No. 1 JD 96.

Court of Judicial Discipline
of Pennsylvania.

Dec. 10, 1996.
Order Issuing Reprimand Feb. 11, 1997.
Memorandum on Sanctions March 3, 1997.

7. 42 Pa.C.S. § 761.

Before McCLOSKEY, President Judge,
and BURNS, McGINLEY, DONOHUE,
CASSEBAUM, MAGARO and MESSA, JJ.

## DECISION

McCLOSKEY, Judge.

### Findings of Fact

In accordance with Court of Judicial Discipline Rule of Procedure 502(D)(1), the Judicial Conduct Board and the Respondent have submitted stipulations of fact in lieu of trial. Under Rule 502(D)(1) the Court must accept the following facts as the facts necessary for disposition of this case, and hereby incorporates and adopts the stipulated facts below:

1. The Judicial Conduct Board (hereinafter referred to as the "Board") is empowered by Art. V, § 18 of the Constitution of the Commonwealth of Pennsylvania to file formal charges alleging ethical misconduct on the part of judges, justices or justices of the peace and to present the case in support of the formal charges before the Court of Judicial Discipline.

2. President Judge Jeffrey Alan Smith (hereinafter referred to as "Respondent") is a duly-elected judge of the Court of Common Pleas serving the Forty-second Judicial District, which encompasses Bradford County, Pennsylvania.

3. Respondent commenced his service as a judge of the Court of Common Pleas of the Forty-second Judicial District on or about December 27, 1983, was elected to a ten-year term beginning January 2, 1986, and retained for another ten-year term after an election in November, 1995.

4. The Respondent is currently one of two commissioned judges in the Forty-second Judicial District.

5. In November, 1987, John C. Mott was elected judge of the Court of Common Pleas in Bradford County and commenced his service in January, 1988. Judge Mott continues to serve at this time.

6. Prior to Judge Mott's service, the Respondent was the only commissioned judge in the Forty-second Judicial District.

7. In his capacity as president judge of the Forty-second Judicial District, the Respondent has adjudicative and administrative responsibility for all divisions of the Court of Common Pleas in the Forty-second Judicial District (although all Orphans' Court cases are assigned to Judge Mott).

8. Since Judge Mott took office in January, 1988, the caseload in Bradford County was divided between the two judges by assigning all even-numbered (using the second digit) cases to the Respondent and all odd-numbered and Orphans' Court cases to Judge Mott. This pattern was altered only when the judges disqualified themselves from a case or were otherwise unavailable.

9. At no time since 1988 did the Respondent request any additional help from the Administrative Office of the Pennsylvania Courts in the form of assigning a senior judge or other matters in order to help him administer to his caseload.

10. Since December, 1983, the Respondent has generally attempted to comply with Rule of Judicial Administration 703 in that the Respondent has kept a record of each matter, civil, orphans' court, and criminal, whether interlocutory or final, which was pending before him for disposition. These records were intermittently submitted to the Court Administrator of Pennsylvania usually no later than the tenth day of the calendar month for the period ending with the last day of the preceding calendar month. Additionally, Judge Mott has also complied with the substantive requirements of Rule 703.

11. The Respondent failed to render decisions in a timely manner with regard to the following cases identified in the Complaint of the Judicial Conduct Board (Board Complaint): Case Nos. 1, 3, 5–10, 13, 16–18, 23, 24, 27, 32–41, 43–50, 52, 53, 56–66, 68–70, 72–74, 76–82, 84 and 85.

12. The decisional delay in the cases identified in Paragraph 11 of these Stipulations was unreasonable and unjustifiable under the circumstances.

13. The Respondent did not act with malicious intent with regard to the rights of litigants in failing to render prompt decisions.

### Discussion

#### Neglect or Failure to Perform the Duties of Office

The Board contends that the Respondent has failed to render decisions in a timely manner, and thereby has engaged in conduct which constitutes a neglect or failure to perform the duties of office under Art. V, § 18(d)(1). Neither the Pennsylvania Supreme Court, nor disciplinary entities in other jurisdictions that have similar disciplinary provisions, have set forth a standard to determine when a judicial officer has violated this provision. In seeking to establish such a standard, we note that there are two basic questions involved in analyzing this provision: (1) what are the duties of office of a common pleas court judge, and (2) what conduct with regard to those duties will constitute a neglect or failure to perform them.

#### a. What are the Duties of a Common Pleas Court Judge?

With regard to the question of what duties are imposed upon a common pleas court judge, we note that the genesis of judicial powers in the Commonwealth stems from Art. V, § 1 of the Pennsylvania Constitution, which establishes the Unified Judicial System as the basic framework for the judicial branch in the Commonwealth. Section 5(b) of Art. V sets forth the general jurisdiction of the courts of common pleas, vesting those courts with "unlimited original jurisdiction in all cases except as may otherwise be provided by law."

The powers and jurisdictional limits of the common pleas courts have been further fleshed out by the legislature in the Commonwealth's Judicial Code, 42 Pa.C.S. § 101 et seq. Also, the Supreme Court has played its role as the supervisor of the Unified Judicial System, 42 Pa.C.S. § 1701, by promulgating rules governing the processes used by the courts and the administrative organization of the judicial system, which refines the powers, and consequently the duties, of judges of the common pleas courts.

Although the above-mentioned sources of the courts' powers and duties are in some instances specific with regard to particular duties of common pleas court judges, many duties of those judges are not precisely set forth but rather implied, based upon the powers vested in the courts.

■ Hence, when considering whether a judicial officer has neglected or failed to perform a duty of office, we may look to not only statutory and regulatory directives, but also to those duties that are implied by law.

With regard to the question of whether rendering decisions is a duty of a common pleas court judge, we note that generally neither statute nor rule dictate the performance of such a task. Therefore, in order to conclude that the Respondent has engaged in neglect or failure to perform a duty of office, we must consider whether the duty to render decisions is one that is implied by law.

■ As noted above, the legislature, in implementing the powers vested in it by Art. V, to define the jurisdiction of the common pleas courts, has vested those courts with the power to preside over various civil and criminal disputes. Based upon the courts' jurisdiction over such matters, we can infer that one of the necessary functions and indeed duties of judges is not only to preside over disputes, but also to resolve such disputes through the decision-making process. Accordingly, we conclude that the duty to render decisions in cases that are ripe for resolution is an implied but essential duty of judicial office. Hence, the "duty of office" element of the charge has been satisfied.

However, the duty to render decisions must have some temporal qualifications. We recognize that judges must have a reasonable amount of time within which to render decisions.

Neither statute nor Supreme Court rule sets forth a particular time frame within which judges must render decisions in cases that are ready for disposition. The only guidance is found in the Supreme Court's Rule of Judicial Administration 703, which requires common pleas court judges to submit reports of cases that have been pending for more than sixty days. Under that rule, judges are required to proffer explanations for why cases that remain pending past the sixty-day period have not been decided.

■ Because this Court concludes that a sixty-day period is generally a reasonable

time within which trial judges should dispose of matters that are ripe for disposition, that period of time supports the acceptance by this Court of a substantive rule applicable in proceedings before this Court when the Board charges a judge with unjustifiable delay.

As noted above, the Board, in seeking to establish that a judge has engaged in conduct which constitutes a neglect or failure to perform a duty of office, must establish that a duty exists. However, once that element is established, it is also reasonable to consider whether a judge has some excuse for not complying with the duty. Accordingly, the Court must consider the various evidentiary burdens of the Board and Respondent in the context of decisional delay, specifically with regard to the issue of justification or excuse for delay beyond the sixty-day period.

In legal proceedings, questions often arise regarding which party has the responsibility to present evidence on a particular issue of fact. In many instances, the party which has pleaded a case against another has the initial responsibility of offering evidence in support of the facts necessary to prevail on the pivotal legal points at issue. McCormick on Evidence, § 337 (John William Strong ed., 3d ed. 1984). He must establish a prima facie case.

Courts often decide the question of what constitutes a prima facie case, and also, which party carries the initial burden of production on a fact issue, although in some instances the legislature will designate which party has a particular evidentiary responsibility. Leonard Packel and Anne Bowen Poulin, *Pennsylvania Evidence*, § 301.1 (1st ed., 1987). In seeking to establish the burdens of parties, courts may consider various factors. One such factor is ease of proof. *Id.* When the underlying facts with regard to a particular fact issue are more within the knowledge of one party than another party, who would otherwise have the burden to prove a negative assertion, courts have concluded that the party who has easier access to the facts necessary to prove the fact in issue should bear the burden. *See, Barrett v. Otis Elevator Co.*, 431 Pa. 446, 246 A.2d 668 (1968).

In the present case, we note that, in order to establish some excuse or justification for not rendering a decision within sixty days from when the matter is ripe for disposition, a judicial officer generally has first-hand knowledge of why a decision has not been rendered. Although in some cases the parties litigating a dispute may have slowed the decision-making process, and hence such evidence could be offered by the Board, the judicial officer is the person who would reasonably be able to provide an explanation or justification for the untimely rendering of decisions.

Concern for judicial economy supports the establishment of a rule regarding delay in the decision-making process, whereby the Judicial Conduct Board will have established the non-occurrence of a judge's duty to render decisions, by proving only that a matter has been ripe for disposition for greater than sixty days. A judicial respondent will be the party responsible for offering evidence of excuse or justification for not rendering decisions within sixty days.

When the Board offers proof of sufficient weight and credibility on the elements concerning duty and timing of decisions, a judicial respondent seeking to challenge the Board's charge must offer evidence which justifies or excuses his non-compliance with the sixty-day time standard. As in a civil proceeding, the Court, when considering whether a respondent has offered sufficient evidence to resolve the issue of justification, that is, whether the fact finder can even consider the issue and a respondent thereby avoid a directed verdict, will give a respondent the "benefit of all reasonable inferences arising from the evidence favorable" to him. *See, Beary v. Pennsylvania Electric Co.*, 322 Pa.Super. 52, 469 A.2d 176 (1983).

 The Court also concludes that, in situations involving the rendering by a trial judge of a decision in a matter ripe for disposition for greater than six months, the delay constitutes such an outrageous deviation from the expected standard, that the Court may reasonably presume that the delay is unjustified.

 Legal presumptions created either by courts or statutes may have various legal consequences. *See, Pennsylvania Evidence,*

*supra*, § 306. The practical effect of legal presumptions is to negate at least initially, the need for a party to introduce evidence of a particular fact necessary for a legal conclusion. Presumptions are not evidence, and yet they affect the evidentiary component of a trial, because, depending upon the particular jurisdiction and presumption, the party against whom the presumption operates may be required to either bear the burden of persuasion or production or both burdens on the particular factual issue. *Waters v. New Amsterdam Casualty Co.*, 393 Pa. 247, 144 A.2d 354 (1958). In fact, in some jurisdictions, presumptions may be conclusive and non-rebuttable.

A presumption may shift the burden of persuasion to the respondent, which means that, if the respondent fails to persuade the fact finder of the non-existence of the presumed fact, the fact finder will determine that the presumed fact is true. *See, Rice v. Shuman*, 513 Pa. 204, 519 A.2d 391 (1986). Another type of presumption may shift the burden of production to the respondent, and the respondent, in order to negate the presumption need only offer evidence that the fact is not true. Additionally, courts have applied different rules to the efficacy of a presumption once the party against whom the presumption operates offers sufficient evidence in contradiction of the presumption. In some jurisdictions, evidence offered will completely destroy the presumption, and the fact finder will be required to ignore the presumption and to address only the actual evidence offered of the specific fact. *See, Com. ex rel. McDermott v. McDermott*, 236 Pa.Super. 541, 544, 345 A.2d 914, 915 (1975).

Because the Court believes that a six-month period goes beyond the reasonable expectation of parties before a common pleas judge, we conclude that, when a judicial officer does not render a decision for more than six months, a rebuttable presumption is created that the delay is unjustified. A respondent seeking to establish justification must offer evidence of such weight and sufficiency that the fact finder is convinced that it is more probable than not that the fact established by the presumption—that the respondent has no justification for the delay—does not exist. The respondent will bear the risk that the evidence offered will not negate the presumption created. *See, Lynn v. Cepurneek*, 352 Pa.Super. 379, 386, 508 A.2d 308, 312 (1986).

The difference between the rule established for cases pending more than sixty days and the rule for cases pending for more than six months is that no legal presumption of nonjustification is created in cases pending for more than sixty days but less than six months. Hence, assuming a respondent offers evidence of excuse, the fact finder will not be able to consider any presumption in cases involving delay of less than six months, but may consider the presumption in cases involving delay periods greater than six months.

### b. What Conduct Constitutes Neglect or Failure?

The Court must consider whether the Respondent neglected or failed to perform his duty of rendering decisions. The Constitution does not define the terms "neglect" or "failure." Hence we must consider other definitional guideposts. The word "neglect" when used as a verb has been defined as "[failing] to care for or attend to properly" or "[failure] to do or carry out, as through carelessness or oversight." American Heritage Dictionary of the American Language, Third Edition, p. 1209. The word "failure" has been defined as "[t]he condition or fact of being insufficient or falling short" or "[n]onperformance of what is requested or expected; omission." *Id.*, p. 655.

Both words clearly refer to conduct which is omissive in nature. However, the words do have different meanings. For example, the word "neglect" encompasses omissive conduct that is the result of carelessness, whereas, the word "failure" refers to a status of being ineffectual and unable to perform.

Because the words do have distinct meanings, and because the rules of statutory construction, which are applicable to constitutional analysis as well as statutes, *Peoples Bridge Co. of Harrisburg v. Shroyer*, 58 Dauph. 25 (1947), affirmed, 355 Pa. 599, 50 A.2d 499 (1947), instruct us that the legislature is presumed not to have adopted language which is redundant or surplusage, *Habecker v. Nationwide Insurance Co.*, 299

Pa.Super. 463, 445 A.2d 1222 (1982), we conclude that the intent of the legislature in using two distinct words was to require evidence of a particular mental state before sanctions may be imposed for noncompliance with a duty of office. The use of two distinct words suggests that the legislature further intended that more than one type of mental state should be involved, depending on the nature of the duty at issue.

In seeking to determine the mental state necessary for a violation of this provision, we are guided by the culpability standards set forth in section 302 of the Crimes Code, 18 Pa.C.S. § 101 et seq. That section describes the various degrees of mental state that prosecutors may have to establish when persons are charged under the Crimes Code with criminal conduct.

In substance, the definitions of culpability under section 302, indicate that a person acts "knowingly" when he or she is aware that it is "practically certain" that his or her conduct will result in a particular outcome. Subsection (b)(2)(ii). A person acts "recklessly" when he or she consciously disregards a substantial and unjustifiable risk that his or her conduct will result in a particular outcome. Subsection (b)(3). And, a person acts "negligently" when he or she should be aware of a substantial and unjustifiable risk of such a nature and degree that the actor's failure to perceive the risk, considering the nature of his conduct and the circumstances known to him, involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation. Subsection (b)(4).

■ Adopting the essence of those definitions and applying them to the charge of neglect or failure to perform the duties of office, we conclude that the drafters of the Constitution intended that the "neglect and failure" elements of the charge at issue encompass conduct relating to the performance of official duties where a judicial officer (1) knows that the nonperformance of some act is likely to result in an omission on his or her part with regard to an important judicial duty, (2) has reason to believe that the nonperformance of some act is likely to result in an omission on his or her part with regard to

an important judicial duty, but disregards the belief, or (3) does not realize that the nonperformance of some act is likely to result in an omission on his part with regard to a significant duty, when a judge of common sense would realize that the nonperformance of the act constitutes a deviation from a standard expected of judges.

In summary, the neglect or failure to perform the duties of office consists of a knowing or reckless disregard of important duties of office or the negligent disregard of a significant duty of office.

■ In this case, we conclude that rendering decisions is a significant duty of office. The Respondent, without justification or excuse, did not perform that duty in a timely manner in numerous instances. A reasonable judge would have realized that, by engaging in dilatory conduct with regard to the rendering of decisions, such conduct constituted a deviation from the standard which is expected of judges. Therefore, the Respondent's failure to realize that his conduct deviated from the standard and his actual noncompliance with his duty to render decisions within sixty days, constitutes a neglect or failure to perform the duties of office.

### Conduct Which Prejudices the Proper Administration of Justice

The Court shall now consider whether the Respondent engaged in conduct which prejudices the proper administration of justice. As an initial matter we are required to answer the question of what is the "proper administration of justice." Then we must evaluate how a judicial officer's conduct may rise to a level which prejudices the proper administration of justice.

■ The term "administration of justice" has been used in cases arising in the context of contempt of court. In those cases, courts have concluded that the administration of justice has been adversely affected by conduct which results in the obstruction of or interference with the work of the court. *In re Adams*, 435 Pa.Super. 202, 645 A.2d 269 (1994), *petition for allowance of appeal denied*, 539 Pa. 686, 653 A.2d 1225 (1994). In order to establish a case of criminal contempt

of court, the prosecution must establish the following four elements beyond a reasonable doubt: (1) misconduct, (2) in the presence of the court, (3) committed with the intent to obstruct proceedings, and (4) which obstructs the administration of justice. *Adams.*

 Because of the similarity in language, we are guided by the elements of criminal contempt of court and conclude that certain elements of that charge are relevant to the charge of conduct with prejudices the proper administration of justice. We therefore adopt the following standard to determine the elements which constitute the proper administration of justice. The administration of justice encompasses all work of the courts of common pleas which aid in the systematic operation and normal functions of the court system. Conduct which prejudices the proper administration of justice, as in contempt of court cases, is conduct which obstructs or interferes with those activities which enable the systematic operation of the courts. The term "systematic operation" encompasses not only the procedures adopted by courts which aid in functioning, but also the standards of conduct expected of judicial officers in the performance of the work of the courts. Hence, when a judicial officer's conduct departs from the standard expected of judges and has the affect of obstructing or interfering with the systematic operation or normal functions of the court, his conduct will have affected the proper administration of the courts.

However, we must also consider whether a judicial officer whose actions result in an obstruction of or interference with systematic operation and normal functions of the court system must act with deliberation or purpose in bringing about such an effect.

Art. V, § 18 of the Pennsylvania Constitution sets forth the grounds on which a judge may be disciplined. We are setting forth those grounds seriatim and numbered so that the reader may more easily comprehend them. They are:

1. conviction of a felony;

2. violation of Art. V, § 17 of the Constitution of the Commonwealth;

3. misconduct in office;

4. neglect or failure to perform the duties of office;

5. conduct which prejudices the proper administration of justice; and

6. conduct which brings the judicial office into disrepute.

As noted above, courts may apply the rules of statutory construction, codified at 2 Pa. C.S. §§ 1501–1991, in analyzing provisions of the Constitution. In seeking to establish a standard to determine when conduct prejudices the proper administration of justice, we are guided by the principle of statutory construction that language in a statute should be construed to avoid an unreasonable result. 1 Pa.C.S. § 1922(1). It is reasonable in construing the language of § 18(d)(1) to find an interpretation that gives breath to each provision. In the context of conduct made criminal in the Crimes Code, the law recognizes the principle that conduct should not be penalized under more than one criminal provision, unless there exist separate facts which support charges under additional criminal provisions. Similarly, in the case of judicial conduct provisions, it is reasonable to construe the constitutional provisions, if possible, to be distinct violations with differing elements.

The Constitution specifically provides that conduct which prejudices the proper administration of justice, unlike conduct which constitutes a neglect or failure to perform the duties of office, can arise from the acts of a judicial officer outside the performance of official duties. However, because conduct which prejudices the proper administration of justice can also arise within the context of official duties, we must seek to construe this provision in a manner different from conduct which constitutes a neglect or failure to perform the duties of office.

The two provisions can be distinguished in that neglect or failure to perform the duties of office encompasses conduct of omission only, whereas, conduct which prejudices the proper administration of justice may also encompass affirmative acts performed in the course of official duties.

Because the two provisions have elements that both distinguish and resemble each other, a reasonable manner by which to distinguish them would be to construe conduct which prejudices the proper administration of justice as requiring an added element of specific intent with regard to both the elements of "prejudice" and "administration of justice."

 Hence, unlike neglect or failure to perform the duties of office, which contains a mental state requirement that the judicial officer be aware to some degree that his inaction is resulting in or has resulted in the nonperformance of a duty of office, a judicial officer who engages in conduct which prejudices the proper administration of justice would have the added element of a mental state in which he or she not only knew that the conduct at issue consisted of some neglect or impropriety, but also acted with the knowledge and intent that the conduct would have a deleterious affect upon the administration of justice, for example, by effecting a specific outcome. Such a requirement comports with the above-noted analogous elements of criminal contempt of court.

An example of such intent in the case of untimely decision making would be where a judicial officer deliberately delays his decision in order to effect a benefit upon one litigant over another, or when, in supervising the administration of a case or cases, the judicial officer engages in conduct by which he intends to affect the course of proceedings in a specific manner.

 In summary, we conclude that conduct which prejudices the proper administration of justice contains three elements: (1) misconduct, (2) committed with the intent to obstruct proceedings, and (3) which obstructs the administration of justice. With regard to the Respondent's conduct, we note that his delay in decision making may have affected the systematic operation of the courts, if for example, litigants, upon receiving his decisions, had to engage in additional proceedings which further prolonged an ultimate resolution of their disputes. Unjustified delay may also result in other backlogs that affect the entire system. However, in this case there is no evidence that the Respondent purposefully delayed his decision making in order to effectuate a particular outcome, and therefore he did not intend to obstruct or interfere with the administration of justice. Accordingly, we conclude that the Respondent has not engaged in conduct which prejudices the proper administration of justice.

## Conduct Which Brings the Judicial Office into Disrepute

The Board asserts that the Respondent is subject to discipline under Art. V, § 18(d)(1) of the Pennsylvania Constitution, in that his failure to decide cases has brought the judicial office into disrepute. Section 18(d)(1) provides for discipline for "conduct which brings the judicial office into disrepute, whether or not the conduct occurred while acting in a judicial capacity or is prohibited by law."

The judicial function can only be performed when the public accedes to its authority. The preservation of the authority of the office requires that judges conduct themselves so that public confidence in the judiciary is undiminished, and that judicial authority is therefore maintained.

 To sustain a charge under this Section, the Board must make a persuasive showing that (1) the judicial officer has engaged in conduct which is so extreme that (2) it has resulted in bringing the judicial office into disrepute.

We briefly address the first element. The constitutional provision is not self-effectuating. In order for the Board to establish a violation of this provision of the Constitution, the Board must demonstrate a specific act or series of acts, by a judge, which result in a decline of public esteem for the judicial office.

It cannot be presumed that a violation of any other provision, constitutional, canonical, or criminal automatically lowers public acceptance of the authority of the judicial office.

While the nature of specific acts, and the mens rea requirement are not discussed herein, they are important issues for development. Judges are entitled to notice of specific acts which may subject them to discipline.

We next address the second element, "bringing the judicial office into disrepute."

The word "disrepute" has been defined as a "lack or decline of good reputation." "Reputation" has been defined as "a place in public esteem or regard." Webster's Ninth New Collegiate Dictionary, p. 366.

"Disrepute" necessarily incorporates some standard with regard to the reasonable expectations of the public of a judicial officer's conduct.

Even if a judicial officer's actions could reasonably result in a lessening of respect for that judge, it cannot be assumed that the same actions would necessarily bring the judicial office itself into disrepute. In other words, one might say "Judge Smith has failed to decide his cases, and therefore he has lost our respect." Such a finding would not sustain the Board's burden, for the Board must show that the disrespect arising from Judge Smith's actions extends to all judges. In other words, that the wrongful actions of a judicial officer are capable of bringing the judicial office into disrepute is only the first step of the inquiry. The second step is that, in fact, universal disrepute resulted.

How does the Board make such a showing? Analogies may be drawn from areas of the law in which public perception plays a pivotal part.

For example, in the law of defamation, a necessary element is that the publication tends to blacken a person's reputation or to expose him to public hatred, contempt, or ridicule, or to injure him in his business or profession. *Corabi v. Curtis Pub. Co.*, 441 Pa. 432, 273 A.2d 899 (1971).

To prove a case of defamation, the plaintiff must prove, inter alia, that the plaintiff suffered special harm as a result of the publication of defamatory statements. *Cf., Jaindl v. Mohr,* 432 Pa.Super. 220, 637 A.2d 1353 (1994), *petition for allowance of appeal granted,* 540 Pa. 583, 655 A.2d 515 (1995), *aff'd,* 541 Pa. 163, 661 A.2d 1362 (1995).

██ In the present case, the stipulations offer no support for the conclusion that the Respondent's activities brought disrepute upon the judiciary. Absent such evidence, we cannot conclude that the Respondent has violated the constitutional dictates.

### *Code of Judicial Conduct Violations*

The Board has charged the Respondent under various canons of the Code of Judicial Conduct. The Court shall address those charges below.

### *Canon 1*

Canon 1 provides in pertinent part as follows:

A JUDGE SHOULD UPHOLD THE INTEGRITY AND INDEPENDENCE OF THE JUDICIARY.

An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should himself observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved....

██ As indicated by the preamble to Canon 1, the focus of this canon's language is to ensure the independence of the judiciary, free from interference from the executive or legislative branches of government. Hence, when Canon 1 refers to the duty of judges to establish and maintain high standards of conduct, the canon is contemplating the establishment of broad standards of conduct applicable to judicial officers which will preclude the need for the other branches of government to become involved in the operation of the judicial system. The language of Canon 1 is hortative and goal oriented, and does not set forth with specificity the precise nature of conduct and standards to which it is aimed. Because Canon 3, as discussed below, is pointedly aimed at the Respondent's conduct, we conclude that the Respondent has not violated Canon 1.

### *Canon 2*

Canon 2 provides:

A JUDGE SHOULD AVOID IMPROPRIETY AND THE APPEARANCE OF IMPROPRIETY IN ALL HIS ACTIVITIES.

A. A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

B. A judge should not allow his family, social, or other relationships to influence his judicial conduct or judgment. He should not lend the prestige of this office to advance the private interests of others; nor should he convey or knowingly permit others to convey the impression that they are in a special position to influence him. He should not testify voluntarily as a character witness.

The preamble to Canon 2 states that judges "should uphold the integrity and independence of the judiciary." The subsections of Canon 2 are directed towards (1) public and professional conduct which could cause the public to lose confidence in the judiciary and (2) conduct which has the potential to cast doubt as to a judge's independence in decision making and objectivity. Canon 2 in general is directed towards conduct which could potentially cause the public or litigants to believe that a judge is not acting impartially.

■ With regard to the Respondent's conduct, the stipulated facts do not suggest that the Respondent engaged in an impropriety or that his conduct gave rise to the appearance of impropriety. Accordingly, we conclude that the Respondent has not violated Canon 2.

### Canon 3

The Board has charged the Respondent with three separate violations of Canon 3: (1) the language of the preamble, which provides that a judge "should perform the duties of his office impartially and diligently," (2) Subsection (A)(5), which directs judges to "dispose promptly of the business of the court;" and (3) Subsection (B)(1), which generally directs judges to dispose of their administrative responsibilities diligently and to maintain professional competence in judicial administration.

■ The Respondent, by engaging in conduct which constitutes a neglect or failure to perform the duties of office, has also failed to perform the duties of office diligently, and has thereby violated Canon 3(A)(5).

■ The Board has also charged the Respondent under subsection (B)(1). However, that subsection in general relates to administrative rather than adjudicatory duties. The facts, as noted above, are that the Respondent failed in performing his adjudicatory duties. The stipulations are insufficient to support the conclusion that he failed to discharge his administrative duties. Although the parties stipulated regarding the Respondent's compliance with Rule 703, there is insufficient factual support to conclude that his conduct with regard to the 703 Reports constitutes a violation of Canon 3(B)(1). Accordingly, we conclude that the Respondent did not violate Canon 3(B)(1).

### Violation of Article V, § 17(b)

■ Article V, § 17(b) sets forth activities in which judges may not engage. One such activity is conduct which violates a canon of judicial ethics. The Supreme Court has adopted the Code of Judicial Conduct, which includes various canons of judicial conduct. Hence, if a judicial officer violates any one of those canons, he has also violated § 17(b). Because we have concluded above that the Respondent violated Canon 3(A)(5), we must also conclude that he has violated § 17(b).

### Conclusions of Law

1. The Respondent unreasonably, and without justification, failed to render timely decisions in sixty-one cases which were pending before him and ready to be decided.

2. The Respondent neglected or failed to perform the duties of office.

3. The Respondent violated Canon 3(A)(5) of the Code of Judicial Conduct, a Canon prescribed by the Supreme Court.

4. The Respondent, by violating Canon 3(A)(5), has engaged in conduct which violates Article V, § 17(b) of the Pennsylvania Constitution.

5. The Stipulations of Fact submitted by the parties in this case, pursuant to C.J.D.

Rule 502(D)(1) do not support the following charges in the Complaint:

a. that the Respondent engaged in conduct which prejudices the proper administration of justice.

b. that the Respondent engaged in conduct which brings disrepute upon the judiciary.

c. that the Respondent violated Canon 1 of the Code of Judicial Conduct.

d. that the Respondent violated Canon 2 of the Code of Judicial Conduct.

e. that the Respondent violated Canon 3(B)(1) of the Code of Judicial Conduct.

6. The Respondent is subject to disciplinary sanctions pursuant to Article V, § 18(d)(1).

## ORDER

AND NOW, this 10th day of December, 1996, based upon the above Conclusions of Law, it is hereby ORDERED:

1. Pursuant to C.J.D.R.P. No. 503, the attached Opinion with Findings of Fact and Conclusions of Law is filed and shall be served on the Judicial Conduct Board and the Respondent.

2. Either party may file written Objections to the Court's Conclusions of Law within ten (10) days of this Order. Said Objections shall include the basis therefor and shall be served on the opposing party.

3. If timely Objections are not filed, the Findings of Fact and Conclusions of Law shall become final.

## ORDER

PER CURIAM.

AND NOW, this 11th day of February, 1997, after hearing on the issue of the sanction to be imposed in the above-captioned matter, it is hereby ORDERED:

1. The Stipulations of Fact and this Court's Conclusions of Law, entered December 10, 1996, are incorporated in accordance with C.J.D.R.P. 504(B);

2. Jeffrey Alan Smith, judge of the Forty-second Judicial District, is publicly repri-manded for unnecessary and unjustified delay in rendering decisions;

3. In recognition of the Supreme Court's recent amendment of Rule 703 of the Rules of Judicial Administration, no additional sanction of probation for the purpose of supervision of the Respondent's workload is warranted;

4. A formal Memorandum concerning the Respondent's conduct shall follow issuance of this Order; and

5. The Clerk shall serve copies of this Order upon the parties.

## MEMORANDUM

This Memorandum is issued in accordance with Paragraph No. 4 of this Court's Order of February 11, 1997.

On February 3, 1997, this Court held a hearing on the issue of sanctions pursuant to C.J.D.R.P. 504(A). At that time testimony was presented relating to respondent's performance of his judicial duties. We are satisfied that respondent has been fair, courteous, dignified and conscientious in the discharge of his duties. We are also satisfied that he has cooperated with the Board throughout its investigation of this case, and that he is presently current with his duties.

But we are mindful that unreasonable delay in rendering a decision cannot be justified or excused because a judge had difficulty arriving at a decision based upon his individual conscience. All parties before our courts are entitled to a decision within a reasonable time.

Therefore, after consideration of the testimony, and based on the Findings of Fact and Conclusions of Law heretofore filed, this Court imposed the sanction of public reprimand with no additional sanction of probation for the purpose of supervision of respondent's workload.

The Clerk shall serve copies of this Memorandum upon the parties.