## In re James M. DeLEON, Criminal Division, Philadelphia Municipal Court, Philadelphia County.

### No. 2 JD 08.

Court of Judicial Discipline of Pennsylvania.

Dec. 10, 2008.
Orders Jan. 5, 2009.

---

Daniel T. Reimer, Asst. Counsel, Judicial Conduct Bd., for Judicial Conduct Bd.

Samuel C. Stretton, West Chester, for respondent.

Before MUSMANNO, P.J., and JUDGE, KURTZ, JAMES, SHABEL, CURRAN and ROBINSON, JJ.

OPINION BY Judge MUSMANNO.

## I. *INTRODUCTION*

The Judicial Conduct Board (Board) filed a Complaint with this Court on August 7, 2008 against Judge James M. De-Leon (Respondent) consisting of four counts which charge Respondent with:

1. violation of Article V, § 18(d)(1) of the Pennsylvania Constitution by engaging in conduct which brings the judicial office into disrepute (Count 1),

2. violation of Canon 2A. of the Code of Judicial Conduct by failing to conduct himself in a manner that promotes public confidence in the integrity and impartiality of the judiciary (Count 2),

3. violation of Canon 2B. of the Code of Judicial Conduct by allowing a social relationship to influence his judicial conduct or judgment and by lending the prestige of his office to advance the private interests of others (Count 3),

4. violation of Canon 3A.(4) of the Code of Judicial Conduct by failing to accord all persons who were legally interested in the proceedings a full right to be heard according to law and by considering *ex parte* communications concerning this matter (Count 4).

The Board and the Respondent have submitted Stipulations of Fact in Lieu of Trial under C.J.D.R.P. No. 502(D)(I) and a waiver of trial. The Court hereby accepts those stipulations in pertinent part, recited below, as the facts necessary for the disposition of this case.

## II. *FINDINGS OF FACT*

1. This action is taken pursuant to the authority of the Board under Article V, § 18 of the Constitution of the Commonwealth of Pennsylvania, which grants the Board the authority to determine whether there is probable cause to file formal charges, and, when it concludes that probable cause exists, to file formal charges, against a justice, judge, or magisterial district judge, for proscribed conduct and to present the case in support of such charges before the Court of Judicial Discipline.

2. From January 1988 to present, and at all times relevant hereto, the Respondent has served as a Philadelphia Municipal Court Judge, Philadelphia County, Pennsylvania, with an office currently located at 1311 Criminal Justice Center, 1301 Filbert Street, Philadelphia, Pennsylvania 19107. As a Municipal Court Judge, he is, and at all times relevant hereto, was subject to all the duties and responsibilities imposed on him by the Code of Judicial Conduct.

3. In or around August 2005, Respondent attended an informal social event at an establishment in Center City Philadelphia, at which members of the Romanian Community were present.

4. While at this event, Respondent was introduced to George Sfedu (hereinafter "Sfedu"), Consul General of Romania to the City of Philadelphia.

5. Sfedu informed Respondent that he was having personal problems with an individual/neighbor named Lee Corley (hereinafter "Corley").

6. Sfedu related to Respondent his belief and concern that Corley was having unwanted verbal contact with Sfedu's teenage daughter, and Sfedu advised Respondent that he wanted this contact to cease.

7. Respondent offered to help and instructed Sfedu to have his wife, attorney Susan Satkowski (hereinafter "Satkowski"), call Respondent's chambers to obtain a "stay away order."

8. Subsequently, on or about September 7, 2005, Satkowski called Respondent's chambers and spoke with Respondent's secretary, Linda Carter (hereinafter "Carter").

9. Satkowski explained the purpose of her telephone call and provided Carter with the names and addresses of herself, her daughter and Corley.

10. Carter spoke with Respondent, and the latter instructed Carter to prepare, sign and send a "Stay Away Order" to both Satkowski and Corley.

11. The "Stay A way Order" was captioned *Commonwealth of Pennsylvania v. Lee Corley,* labeled "IN THE COURT OF COMMON PLEAS PHILADELPHIA COUNTY SEPTEMBER TERM 2005" and provided, *inter alia:*

"AND NOW, to wit this 7th day of September, 2005 defendant Mr. Lee Corley ... conducted unlawful activity in connection with or with regard to the following persons Susan E. Satkowski and minor child ... it is hereby ORDERED AND DECREED that the defendant is prohibited from any physical and/or verbal contact or intimidating the above mentioned person(s), family, friends, agents or acquaintances and that the defendant have no communication whatsoever, directly or indirectly, with the person(s) and/or place of business, except through an attorney. These penalties may be imposed whether the violation complained of has been committed by you personally or caused or encouraged by you. Violation of this order will result in your arrest."

12. The "Stay Away Order" was signed "DeLeon, J."

13. Respondent's secretary, as per Respondent's instruction, mailed this Order to both Satkowski and Corley.

14. The "Stay Away Order" was not filed, docketed or otherwise made a part of any official record, and was not issued in connection with any pending criminal matter.

15. Prior to the issuance of the "Stay Away Order," no notice was provided to Corley and no evidentiary or other hearing was conducted with regard to the Order.

16. Subsequent to receiving this "Stay Away Order," Corley hired counsel, who sent written correspondence to Respondent dated September 29, 2005 and January 30, 2006, which *inter alia*, questioned the propriety of the court's issuance of the "Stay Away Order."

17. After receiving the January 30, 2006 letter from attorney Lawrence A. Mester (hereinafter "Mester"), Respondent instructed his secretary or other staff member to call Mester and inform him to appear with his client (Corley) in Respondent's courtroom in Municipal Court on a day in which he was presiding.

18. On February 2, 2006, Mester and Corley appeared in front of Respondent and presented him with an "Order Vacating Order Dated September 7, 2005."

19. After briefly discussing the matter with both Mester and Corley, Respondent signed the "Order Vacating Order Dated September 7, 2005" and handed Mester the original.

20. As with the original "Stay Away Order," this second order was not filed, docketed or otherwise made a part of any official record, and was not issued in connection with any pending criminal (or civil) matter.

21. As with the original "Stay Away Order," no notice was provided to the opposing party to this proceeding (i.e. Satkowski) prior to issuing the vacating order.

### III. DISCUSSION

The Court finds that the stipulations of the parties adopted as the Findings of Fact set out above support the charges made by the Judicial Conduct Board in:

COUNT 1: Respondent has violated Article V, § 18(d)(1) of the Pennsylvania Constitution by engaging in conduct which brings the judicial office into disrepute.

COUNT 2: Respondent has violated Canon 2A. of the Code of Judicial Conduct by failing to conduct himself in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

COUNT 3: Respondent has violated Canon 2B. of the Code of Judicial Conduct by allowing a social relationship to influence his judicial conduct or judgment and by lending the prestige of his office to advance the private interests of others.

COUNT 4: Respondent has violated Canon 3A.(4) of the Code of Judicial Conduct by failing to accord all persons who were legally interested in the proceedings a full right to be heard according to law and by considering *ex parte* communications concerning this matter.

We will discuss the charges in the order in which they appear above.

*Count 1:* The Respondent engaged in conduct which brings the judicial office into disrepute—a violation of Article V, § 18(d)(1) of the Pennsylvania Constitution.

In *In re Smith,* 687 A.2d 1229 (Pa. Ct.Jud.Disc.1996), this Court held that in order to sustain this charge, the Board must make a persuasive showing that the conduct of the judge was so extreme as to have brought the judicial office itself into disrepute. *Id.* at 1238. It is insufficient if the conduct has resulted only in the lessening of respect for that particular judge and has not brought disrepute to the judiciary as a whole. *Id.* at 1239.

In *In re Cicchetti,* 697 A.2d 297 (Pa.Ct. Jud.Disc.1997), this Court held that the determination of whether particular conduct has brought the judicial office into disrepute must be made on a case by case

basis. *Id.* at 312. We further held that the term "disrepute" "necessarily incorporates some standard with regard to the reasonable expectations of the public of a judicial officer's conduct." *Id.* citing *Smith,* 687 A.2d at 1239. This standard— whether the alleged conduct deviates from the reasonable expectation of the public— has been consistently applied by this Court in cases in which the Board has charged a judicial officer with bringing disrepute to the judiciary. *See, e.g., In re Hamilton,* 932 A.2d 1030 (Pa.Ct.Jud.Disc.2007); *In re Marraccini,* 908 A.2d 377 (Pa.Ct.Jud.Disc. 2006); *In re Harrington,* 877 A.2d 570 (Pa.Ct.Jud.Disc.2005); *In re Zoller,* 792 A.2d 34 (Pa.Ct.Jud.Disc.2001); *In re Kelly,* 757 A.2d 456 (Pa.Ct.Jud.Disc.2000); *In re Joyce and Terrick,* 712 A.2d 834 (Pa.Ct. Jud.Disc.1998).

■ In *In re Trkula,* 699 A.2d 3 (Pa.Ct. Jud.Disc.1997), this Court applied the standard in observing that the reasonable expectations of the public would include the expectation that a judicial officer would not make an overt, parte attempt to influence the outcome of a case on appeal from her court, to the detriment of the appellant. *Id.* at 7. In that case, the district justice had telephoned the statutory appeals judge and, in essence, requested that the judge render a decision adverse to the appellant. In finding that this conduct brought disrepute to the judiciary as a whole, this Court observed that "it would be difficult to identify conduct which would more assuredly dash public confidence in [the adjudicatory system] and in the judicial office itself." *Id.* at 8.

In the case now before us the Board has alleged, and Respondent has admitted, that, on behalf of a social acquaintance, he issued an *ex parte* "Stay Away Order" without providing any notice to the named defendant, without conducting an evidentiary hearing, without providing the named defendant any right to be heard and making the Order appear to be part of an official court proceeding. This "Order" was clothed with the apparent authority of the common pleas court and threatened the named defendant with bodily arrest upon violation of its terms. Clearly, this conduct deviates from what the public— and certainly the recipient of the order— might reasonably expect from a judicial officer. Certainly, the public would reasonably expect that a judge will not misuse the authority of his office to assist an acquaintance with a purely personal matter. Certainly the public would reasonably expect that a judge will not issue a "Court Order" in such a casual manner and as in this case, totally devoid of any semblance of due process. Certainly the public would reasonably expect that a judge will not sign and issue a document which he knows is false, illegitimate, and bogus, all the while, by his signature and authority, representing it to be authentic and official, bearing with it all the power and authority of the Commonwealth through his judicial office. As with *Trkula,* this Court is hard-pressed to identify conduct which would more assuredly dash public confidence in the judicial office than the conduct in which Respondent has admittedly engaged. Accordingly, we find that the Board has established by clear and convincing evidence that Respondent's conduct was such that brings the judiciary itself into disrepute and is, thus, a violation of Article V, § 18(d)(1) of the Pennsylvania Constitution.

■ *Count 2:* The Respondent violated Canon 2A. of the Code of Judicial Conduct—failure to conduct himself in a manner that promotes confidence in the integrity and impartiality of the judiciary.

Canon 2A. provides:

A. Judges should respect and comply with the law and should conduct

themselves at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

In *In re Cicchetti,* 697 A.2d 297, 313 (Pa.Ct.Jud.Disc.1997) we said that Canon 2A.:

... exhort[s] judges to carefully preserve all appearance of even-handedness, of not favoring or appearing to favor either side in a case, of being and appearing free from influence.

Affirming this Court's holdings in *Cicchetti,* the Pennsylvania Supreme Court stated that Canon 2A.:

... addresses the judicial decision-making process and seeks to avoid the appearance of influence over judicial activities.

*In re Cicchetti,* 560 Pa. 183, 743 A.2d 431, 441 (2000).

It is difficult to call up a more singular example of conduct which would be a more conspicuous violation of the letter and of the intention of Canon 2A. At a social gathering a social acquaintance puts a whisper in Respondent's ear, whereupon Respondent returns to his office, draws up a document—an official-looking Order which grants his friend all the relief he could possibly wish for—which he signs and has served on the named defendant. This, by any measure, establishes actual influence over this Respondent's judicial activities and certainly conveys the appearance thereof.

This is here, thus, a conscious, purposeful violation of Canon 2A. and of the holding of this Court that the Canon requires judges "to carefully preserve all appearance of even-handedness, of not favoring or appearing to favor either side in a case, of being and appearing free from influ-

ence," as well as the holding of the. Supreme Court requiring judges "to avoid the appearance of influence over judicial activities."

We would dismiss as frivolous any contention that Respondent's activities here at issue were not "judicial activities" because the case was not a "real" case, that it was a "made up" case that existed only in the mind of Respondent. But it was in every sense a "real" case so far as the named plaintiff was concerned who received the benefit of the "Stay Away Order," and certainly so far as the named defendant was concerned who was served with the Order which advised that he was subject to arrest should he violate it. And, of course, none of this could have happened if Respondent was not a judge and acting under the ostensible authority of the Pennsylvania Constitution and the Commission issued to him by the Governor.[1]

■ *Count 3:* The Respondent violated Canon 2B. of the Code of Judicial Conduct—allowing a social relationship to influence his judicial conduct or judgment and by lending the prestige of his office to advance the private interests of others.

Canon 2B. provides in pertinent part:

Judges should not allow their family, social or other relationships to influence their judicial conduct or judgment. They should not lend the prestige of their office to advance the private interests of others ...

Recite the stipulated facts set out in Findings of Fact Nos. 3–21 and one has provided a perfect description of the precise conduct proscribed by Canon 2B. Further elaboration can make it no clearer. We find, then, that the Board has established a violation of Canon 2B. of the Code

---

1. These remarks apply as well to any similar contention relating to Count 4. (See Respon-

dent's Brief in Support of his Petition As To The Rule Violations, p. 6.)

of Judicial Conduct by clear and convincing evidence.

■ *Count 4:* The Respondent violated Canon 3A.(4) of the Code of Judicial Conduct—failing to accord to all persons who are legally interested in a proceeding, or their lawyers, full right to be heard according to law, and considering *ex parte* communications concerning the matter.

Canon 3A.(4) provides:

Judges should accord to all persons who are legally interested in a proceeding, or their lawyers, full right to be heard according to law, and, except as authorized by law, must not consider ex parte communications concerning a pending proceeding.

As it is with Count 3, the stipulated facts describe precisely the conduct which Canon 3A.(4) proscribes.

The communications which George Sfedu made to Respondent at the party in August 2005 were *"ex parte"*: Corley, the object of Sfedu's displeasure, was not there, nor was any representative of his, legal or other.

Respondent obviously considered Sfedu's *ex parte* communication for, upon Respondent's instructions, Sfedu's wife, a lawyer, called Respondent's office shortly after the party and provided the information Respondent needed for the "Stay Away Order." These communications were also *"ex parte"* for Corley was not there this time either. It was upon these communications that Respondent prepared and issued the "Stay Away Order."

Corley was certainly a person "legally interested in the proceedings": he was the named defendant against whom the "Stay Away Order" was directed. Respondent, therefore, in accordance with the Canon, was required "to accord [him] ... a full right to be heard according to law." Respondent, however, didn't even notify Corley that he was in the process of issuing a "Stay Away Order" against him, much less providing him with an opportunity to be heard.

We find that the Board has carried its burden of establishing a violation of Canon 3A.(4) by clear and convincing evidence.

## IV. CONCLUSIONS OF LAW

1. Respondent's conduct was such that brings the judicial office into disrepute, a violation of Article V, § 18(d)(I) of the Pennsylvania Constitution.

2. Respondent's conduct constituted a violation of Canon 2A. of the Code of Judicial Conduct by failing to conduct himself in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

3. Respondent's conduct constituted a violation of Canon 2B. of the Code of Judicial Conduct by allowing a social relationship to influence his judicial conduct or judgment and by lending the prestige of his office to advance the private interests of others.

4. Respondent's conduct constituted a violation of Canon 3A.(4) of the Code of Judicial Conduct by failing to accord all persons who are legally interested in the proceedings a full right to be heard according to law and by considering *ex parte* communications concerning this matter.

MORRIS, J., did not participate in the consideration or disposition of this case.

## ORDER

PER CURIAM.

AND NOW, this 10th day of December, 2008, based upon the Conclusions of Law, it is hereby ORDERED:

That pursuant to C.J.D.R.P. No. 503, the attached Opinion with Findings of Fact

and Conclusions of Law is hereby filed and shall be served on the Judicial Conduct Board and upon the Respondent,

That either party may file written objections to the Court's Conclusions of Law within ten (10) days of this Order. Said objections shall include the basis therefor and shall be served on the opposing party,

That, in the event that such objections are flied, the Court shall determine whether to entertain oral argument upon the objections, and, if so, issue an Order setting a date for such oral argument. If the Court determines not to entertain oral argument upon the objections, the Findings of Fact and Conclusions of Law shall become final and this Court will conduct a hearing on the issue of sanctions,

That, in the event objections are not filed within the time set forth above, the Findings of fact and Conclusions of Law shall become final, and this Court will conduct a hearing on the issue of sanctions.

## ORDER

PER CURIAM.

AND NOW, this 5th day of January, 2009, upon consideration of the testimony presented to this Court at the Sanction Hearing and upon the arguments of counsel, the Court ORDERS that Respondent is hereby SUSPENDED for a period of three (3) months WITHOUT PAY from his office of Judge of the Municipal Court of the First Judicial District of Pennsylvania, said suspension shall be effective February 1, 2009; and that thereafter he be placed on probation until January 2,2012, said probation to be supervised by the Judicial Conduct Board; further said probation shall be conditional upon Respondent providing restitution to Mr. Lee Corley for the legal expenses he incurred as a result of the Order entered by Respondent on September 7, 2005 against the said Mr. Lee Corley. The amount of restitution shall be in an amount verified by the Judicial Conduct Board.

## ORDER

PER CURIAM.

AND NOW, this 5th day of January, 2009, upon consideration of Respondent's Objections to the Opinion of this Court and the Judicial Conduct Board's Response thereto, as well as upon the Briefs filed in support of their respective positions, and, as well, upon the arguments of counsel, it is hereby ORDERED that Count 1 of the Board Complaint is DISMISSED. Respondent's Objections to Counts 2, 3 and 4 of the Board Complaint are DENIED.