**In re Isaac H. STOLTZFUS, Magisterial District Judge, Magisterial District 02–3–05, Lancaster County.**

Court of Judicial Discipline of Pennsylvania.

Aug. 17, 2011.

---

Before MORRIS, P.J., JUDGE, SR., KURTZ, JAMES, CURRAN, McGINLEY, and CLEMENT, JR., JJ.

## ORDER

AND NOW, this 17th day of August, 2011, upon consideration of the Joint Stipulations of Fact filed by the parties and of Respondent's Motion to Dismiss, which we treat as a Motion for Summary Judgment, and after oral argument, it is hereby ORDERED that the Motion is GRANTED as to all three Counts, and judgment is entered for the respondent.

OPINION BY Judge CURRAN.

## I. *INTRODUCTION*

We have before us Respondent's Motion to Dismiss the Complaint which was filed with this Court by the Judicial Conduct Board (Board). Since the parties have filed a Joint Stipulation of the Facts, we will treat the Motion as a Motion for Summary Judgment.

The Board filed a Complaint with this Court against Magisterial District Judge Isaac H. Stoltzfus (Respondent) consisting of three Counts which charge Respondent with:

1. violation of Article V, § 18(d)(1) of the Pennsylvania Constitution by engaging in activity which brings the judicial office into disrepute (Count 1),

2. violation of Rule 2A. of the Rules Governing Standards of Conduct of Magisterial District Judges which provides in pertinent part (according to the Board): Magisterial district

judges shall respect and comply with the law and shall conduct themselves at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary (Count 2),

3. violation of Article V, § 17(b)(1)[1] of the Pennsylvania Constitution by failing to adhere to Rule 2A. of the Rules Governing Standards of Conduct of Magisterial District Judges (Count 3).

The Board and the Respondent have stipulated as to the facts of the case. These joint stipulations in lieu of trial have been filed of record together with a joint waiver of any right to trial. The Court accepted these stipulations of fact and makes them its Findings of Fact.

## II. *FINDINGS OF FACT*

1. This action is taken pursuant to the authority of the Board under Article V, of the Constitution of the Commonwealth of Pennsylvania by which the Board is granted authority to determine whether there is probable cause to file formal charges, and, when it concludes that probable cause exists, to file formal charges, against a justice, judge or magisterial district judge, for proscribed conduct and to present the case in support of such charges before the Court of Judicial Discipline.

2. Since on or about April 30, 1991, and at all times relevant hereto, the Respondent has served continuously to the present as Magisterial District Judge of Magisterial District 02–3–05, Lancaster County, Pennsylvania, encompassing the Townships of Bart, Caernarvon, Leacock, Paradise, Sadsbury, and Salisbury; and the Borough of Christiana, Pennsylvania, with an office located at 14 Center Street, Intercourse, Pennsylvania 17534. As a Magisterial District Judge, he is, and at all times relevant hereto, subject to all the duties and responsibilities imposed on him by the Rules Governing Standards of Conduct of Magisterial District Judges and the Constitution of Pennsylvania.

3. During the week of Monday, September 20—Friday, September 24, 2010, Respondent attended the annual Magisterial District Judge Continuing Education program conducted at the Pennsylvania Judicial Center (PJC), 601 Commonwealth Avenue, Harrisburg, Pennsylvania.

4. On Tuesday, September 21, 2010, at approximately 12:40 p.m., Respondent was picking up acorns in Soldiers Grove Park, near the PJC.

5. Respondent, wearing a badge identifying himself as a Commonwealth of Pennsylvania Magisterial District Judge, had a conversation with Susan Wilkinson and Wendy Barkus, Commonwealth of Pennsylvania Department of Health and Welfare employees.

6. While interacting with Ms. Wilkinson and Ms. Barkus, Respondent walked to his handbag, which bore the Seal of the Commonwealth of Pennsylvania, opened it, and produced from it a plastic sandwich bag containing acorns. From this bag, Respondent removed what appeared to be acorns from the sandwich bag and gave some to Ms. Wilkinson and Ms. Barkus. Thereafter, Respondent stated to the woman, "They [the acorns] make a nice afternoon snack, try them. I'll be here tomorrow, let me know what you think."

7. Ms. Barkus looked at the acorn(s) given to her and observed that they looked "shiny" and asked Respondent, "What do

---

1. Subsection (b) of section 17 of Article V of the Pennsylvania Constitution has no subsec-

tions. The Board is referring here to § 17(b).

you do, roast them?" Respondent replied to Ms. Barkus, "Just take them and let me know what you think."

8. Immediately after the exchange, Ms. Wilkinson and Ms. Barkus left Respondent's presence, and sat at a picnic table on the north side of the Health and Welfare Building. Ms. Wilkinson opened an acorn given to her by Respondent and discovered the inside of the acorn was hollowed out and that an unwrapped condom was placed inside the acorn. Ms. Barkus opened one of the acorns given to her by Respondent and also found an unwrapped condom inside a hollowed-out acorn.

9. The Capitol Police Department (CPD) was contacted.

10. CPD Officer Richard L. Smith interviewed Ms. Wilkinson and Ms. Barkus and was informed of their interaction with Respondent, the details of his actions of giving them the condom-filled acorns, and his physical description. They also indicated to Officer Smith that Respondent was wearing an identification badge which identified him as a judge.

11. After the lunch hour, Respondent returned to the Continuing Education Conference Room on the first floor of the PJC. His handbag was secured and opened by an officer of the Capitol Police Department (CPD), and a white plastic bag filled with acorns was discovered therein.

12. Officer Smith seized Respondent's identification badge and handbag and escorted him to CPD Sergeant Randy I. Bistline. The CPD informed Respondent that he was not under arrest and that he was being interviewed for a summary offense of Disorderly Conduct. Present at the interview were Respondent, CPD Sergeant Jones, Officer Hall, and Officer Smith.

13. The CPD officers obtained Respondent's driver's license and identified him as Isaac H. Stoltzfus, the Magisterial District Judge of 02-3-05.

14. Respondent informed the CPD officers that he gave Ms. Wilkinson and Ms. Barkus acorns as a joke, and that he did not intend to offend anyone.

15. The CPD asked Respondent the location of the other acorns and whether he had given acorns to other women. Respondent replied that he did not give any other acorns out to anyone else and that he had only a few of them.

16. Respondent asked the CPD if he could apologize to Ms. Wilkinson and Ms. Barkus, and they replied that he could not. Respondent asked Officer Smith to relay his apology to Ms. Wilkinson and Ms. Barkus; Officer Smith relayed Respondent's apology later that day.

17. Upon leaving Sergeant Bistline's office, Respondent handed his handbag to the receptionist at the PJC.

18. After Respondent left their presence, Officer Smith and another CPD officer went to the men's room adjacent to the Continuing Education area and checked the trash canister. Therein, they found an empty plastic bag. Underneath the plastic bag, the officers found four (4) acorns that appeared to have been tampered with in the same manner as the acorns Respondent gave to Ms. Wilkinson and Ms. Barkus.

19. The CPD advised Respondent that they were going to file a citation for Disorderly Conduct (graded as a summary offense) against him and ethical misconduct complaints with the Board.

20. On September 21, 2010, the CPD cited Respondent with Disorderly Conduct, in violation of 18 Pa.C.S.A. § 5503(a)(4); the citation resulted from Respondent's giving of the condom-filled acorns to Ms.

Wilkinson and Ms. Barkus. Ultimately, the CPD withdrew the citation on October 29, 2010.

21. On Wednesday, January 5, 2011, a deposition was conducted at the Board's offices before Chief Counsel Joseph A. Massa, Jr. Respondent, represented by counsel, admitted under oath that he gave one acorn each to Ms. Wilkinson and Ms. Barkus.

22. Respondent explained that he did so as "a joke." Respondent has collected, hollowed out, and placed unwrapped condoms inside thousands of acorns during his tenure as a Magisterial District Judge. Occasionally, Respondent utilized some condom-filled acorns in his courtroom to raise awareness of the efficacy of condom use against unplanned pregnancy and disease. However, Respondent did not hand condom-filled acorns out in his courtroom.

### III. DISCUSSION

We will discuss the three Counts in the same order as the Board placed them in the Complaint.

■ *Count 1* charges that "Respondent's conduct set out in the Findings of Fact is such that brings the judicial office into disrepute—a violation of Article V, § 18(d)(1) of the Pennsylvania Constitution."

This Court has been called upon frequently to decide whether particular conduct is such that—in the words of our Constitution—"brings the judicial office into disrepute." [2]

We reiterate what we said in *In re Berry*, 979 A.2d 991, 997–98 (Pa.Ct.Jud.Disc.2009):

In evaluating the conduct in each and every one of these cases the Court has consistently applied certain principles and tests in our determinations that any particular conduct was—or was not—such that brings the judicial office into disrepute. In all cases where those holdings have been reviewed by our Supreme Court, those holdings have been affirmed. *See, In re Berkhimer*, 593 Pa. 366, 930 A.2d 1255 (2007); *In re Harrington*, 587 Pa. 407, 899 A.2d 1120 (2006); *In re McCarthy*, 576 Pa. 224, 839 A.2d 182 (2003); *In re Cicchetti*, 560 Pa. 183, 743 A.2d 431 (2000).

These principles for assessing the conduct as bringing the judicial office into disrepute were first set down in this Court's opinion in *In re Smith*, 687 A.2d 1229 (Pa.Ct.Jud.Disc.1997). There we said:

> It cannot be *presumed* that a violation of any other provision, constitutional, canonical or criminal *automatically* lowers public acceptance of the authority of the judicial office. (Emphasis the Court's). *Id.* at 1238.

This Court, therefore, has never presumed that a violation automatically brings the judicial office into disrepute. See cases cited *supra*.

In *Smith* we also first enunciated the principle that:

> "Disrepute" necessarily incorporates some standard with regard to the reasonable expectations of the public of a judicial officer's conduct.

This Court, therefore, has, in every case, made an assessment of what it believed the reasonable expectations of the public would be as to the judicial officer's conduct involved in the particular case.

---

**2.** Pa. Const., Article V, § 18(d)(1). This section of the Constitution further provides that a judicial officer is subject to discipline for conduct which brings the judicial office into disrepute "whether or not the conduct occurred while acting in a judicial capacity or is prohibited by law."

Again, in *Smith* we set down the principle, which we have consistently followed, that "the judicial officer [must have] engaged in conduct which *is so extreme*" that it brings the judicial office into disrepute. *Id.* at 1238. See cases cited *supra.*

In our opinion in *In re Cicchetti,* 697 A.2d 297 (Pa.Ct.Jud.Disc.1997) we held that:

> The determination of whether particular conduct has brought the judicial office into disrepute, of necessity, is a determination which must be made on a case by case basis as the particular conduct in each case is scrutinized and weighed.

*Id.* at 312. This prescript is hardly surprising and is realistically unavoidable in determining whether particular conduct brings the judicial office into disrepute inasmuch as these cases are driven by the facts and the facts are always different.

These principles for determining whether particular conduct brings the judicial office into disrepute have been approved, indeed adopted by our Supreme Court. *See, e.g., In re Berkhimer,* 593 Pa. 366, 372–73, 930 A.2d 1255, 1258–59 (2007) and *In re Cicchetti,* 560 Pa. 183, 206–07, 743 A.2d 431, 443–44 (2000).

■ We must say that Respondent's purpose here and his preoccupation with acorns is mystifying to the Court. It is not funny and we strongly disapprove of this conduct. Although it does not rise to a violation, it certainly lacks good judgment and must not be repeated. In order to find a constitutional violation, we must determine that Respondent's conduct was so extreme as to be such that brings the judicial office itself into disrepute—to be such that "lowers public perception of the authority of the judicial office," *In re Smith* at 1238. In scrutinizing and weighing the circumstances of this case we consider—for we cannot ignore—the fact that condoms are regularly given out to children by our government. We recognize that not everyone agrees that this practice is beneficial, or necessary, or appropriate; but it is a fact. We find that the Board has not established by clear and convincing evidence that Respondent's conduct was so extreme as to bring the judicial office itself into disrepute.

■ *Count 2* charges that "Respondent's conduct set out in the Findings of Fact is a violation of Rule 2A. of the Rules Governing Standards of Conduct of Magisterial District Judges which provides in pertinent part [according to the Board]: Magisterial district judges shall respect and comply with the law and shall conduct themselves at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."

We are sore pressed to understand why the Board persists in bringing charges against magisterial district judges for violations of Rule 2A.—and against judges for violations of Canon 2 (the language is the same)—in cases where the offending conduct was obviously not part of the "decision-making process," i.e., in cases like this.

This Court first addressed the question of what conduct was prohibited by Canon 2[3] in the case of *In re Cicchetti,* 697 A.2d 297 (Pa.Ct.Jud.Disc.1997). In that case we discussed the same language of the canon as is the focus of the Board here, i.e.

---

**3.** As noted, the language of Canon 2 is identical to the language of Rule 2A.

"Magisterial District Judges ... shall conduct themselves at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."[4] In that case, the Board charged *Cicchetti* with a violation of Canon 2 for harassing female courthouse employees. In that case we said:

> Canon 2 ... [is] directed at conduct which would impugn or detract from ... the integrity and impartiality of the judiciary. "Integrity" must be read *in pari materia* ... with "impartiality" in Canon 2. Both of these words ... exhort judges to carefully preserve all appearance of even-handedness, of not favoring or appearing to favor either side in a case, of being and appearing free from influence.

*Cicchetti, supra,* at 313.

We then reiterated our holding in *In re Smith, supra,* at 1239 where we said:

> Canon 2 in general is directed towards conduct which could potentially cause the public or litigants to believe that a judge is not acting impartially.

*Cicchetti, supra,* at 313.

We then noted that:

> The instructions contained in subsection B. of Canon 2: that "a judge should not allow his family, social or other relationships to influence his judicial conduct or judgment" and that he should not "convey or knowingly permit others to convey the impression that they are in a special position to influence him," pro-

vide further support for this interpretation of Canon 2.

*Id.* n. 6.

On appeal the Supreme Court affirmed our holding that Cicchetti's conduct was not a violation of Canon 2—and our reasoning—in a clear, concise and emphatic paragraph:

> Canon 2 ... addresses the judicial decision-making process and seeks to avoid the appearance of influence over judicial activities. Appellee is not subject to censure for a violation of Canon 2 based on his conduct toward Ms. Brueggman because it was independent of his decision-making duties.

*In re Cicchetti,* 560 Pa. 183, 201, 743 A.2d 431, 441 (2000).

Likewise, this Respondent's conduct had nothing to do with his decision-making duties. As a consequence, his conduct was not a violation of Rule 2A.

*Count 3* charges that "Respondent violated Article V, § 17(b) of the Pennsylvania Constitution by failing to adhere to Rule 2A, of the Rules Governing Standards of Conduct of Magisterial District Judges."

Since Respondent did not fail to adhere to Rule 2A. of the Rules Governing Standards of Conduct of Magisterial District Judges, he did not violate Article V, § 17(b) of the Constitution.

## IV. *CONCLUSIONS OF LAW*

1. The Board has failed to establish by clear and convincing evidence that Respondent's conduct constitutes a violation of Rule 2A. of the Rules Governing Stan-

---

4. In Count 2 the Board has also charged that Respondent violated Canon 2 because he failed to "respect and comply with the law." We must conclude that this language was included by inadvertence for there is not even an allegation in the Complaint that Respondent's conduct offended any law. Even if it did, pursuant to the Supreme Court's instruction in *In re Harrington,* 587 Pa. 407, 899 A.2d 1120 (2006), there wouldn't be a violation of Canon 2 unless the conduct took place in the decision-making process, which it didn't. Which it obviously didn't.

dards of Conduct of Magisterial District Judges or a violation of Article V, § 17(b) of the Pennsylvania Constitution, or that his conduct is such that brings the judicial office into disrepute such as would constitute a violation of Article V, § 18(d)(1) of the Pennsylvania Constitution.

2. Respondent is not subject to discipline under Article V, § 18(d)(1) of the Pennsylvania Constitution.

JUDGE Judge concurs in the result.