IN RE: Kelly S. BALLENTINE, Magisterial District Judge, District Court 02–2–01, Second Judicial District, Lancaster County

No. 7 JD 13

Court of Judicial Discipline of Pennsylvania.

Filed: August 4, 2015

---

Robert A. Graci, Chief Counsel, Elizabeth A. Flaherty, Assistant Counsel, Heidi F. Eakin, Esquire, Lemoyne, PA, Samuel C. Stretton, Esquire, West Chester, PA, for Respondent

BEFORE: Honorable Timothy F. McCune, P.J., Honorable John R. Cellucci, Honorable Robert J. Colville, Honorable Carmella Mullen, Honorable Jack A. Panella, Honorable John J. Soroko, Honorable Charles A. Clement, Jr., Honorable David J. Shrager

**OPINION AND ORDER**

OPINION BY PRESIDENT JUDGE McCUNE

### I. *BACKGROUND*

Magisterial District Judge Kelly S. Ballentine of Lancaster County appears before this Court on several charges including a probation violation and a new Complaint concerning her failure to file state and federal income tax returns, failure to remit sales tax for a small business she owned and also as a result of her conviction of a summary offense for operating a business without a sales tax license. These charges were brought while Judge Ballentine was already on

probation with this Court for prior charges involving causing the improper dismissal of traffic tickets issued to her. Judge Ballentine admitted the factual basis of the allegations against her.

On February 5, 2015 a combined hearing on the probation violation (see C.J.D.R.P. No. 505) and the new Complaint as well as the sanctions for both was held by this Court, Effectively, all of Judge Ballentine's misconduct, including the improper ticket dismissal and the tax/business licensure problems are open for consideration here.

## II. *FINDINGS OF FACT*

1. Starting on January 2, 2006, Judge Ballentine served as Magisterial District Judge for Magisterial District 02–2–01 of the Second Judicial District, Lancaster County, Pennsylvania, encompassing the City of Lancaster, Wards 3 and 7.

2. Pursuant to a plea agreement, on February 1, 2013, Judge Ballentine appeared before the Honorable Charles B. Smith, Senior Judge of Chester County Court of Common Pleas specially presiding, and entered a plea of guilty to three misdemeanor counts of Tampering with Public Records of Information, 18 Pa. C.S.A. § 491 l(a)(1)-(3).

3. Judge Ballentine's guilty plea was based on the following conduct which she admitted:

On December 29, 2010, [Ballentine] entered the Magisterial District Judge Computer system and dismissed two traffic citations issued to her on November 1, 2010. [Ballentine] wrote the date, the word "dismissed" and her initials on each citation; 2. On January 27, 2011, [Ballentine] entered the Magisterial District Judge System and dismissed a third traffic citation issued to her on November 8, 2010. [Ballentine] admitted engaging in this intentional conduct

of entering the Magisterial District Judge Computer System and dismissing traffic citations issued to her.

4. By pleading guilty, Judge Ballentine admitted that she "did knowingly make a false entry in or false alteration of any record, document, or thing belonging to or received by or kept by the government for information or record."

5. Subsequently, Judge Ballentine was charged by the Judicial Conduct Board with misconduct and, after a hearing on May 17, 2013, before this Court was suspended from her judicial office without pay for the time period from February 11, 2013 until May 31, 2013 and placed on probation until December 31, 2014.

6. On July 8, 2013, Judge Ballentine agreed to rules and conditions of probation which included the following:

Based on your conduct of dismissing your own traffic citations, it is particularly important that you abide by the following rules. 1. *You shall not engage in any activity prohibited by law* ; 2. You shall comply with the law in all activities which implicate the judicial decision making process; 3. You shall not engage in any activity or behavior, on or off the bench which would impair or prejudice the proper administration of justice; and 4. You shall not engage in any conduct, on or off the bench, which would bring disrepute upon the judiciary. (Emphasis added.)

7. As a condition of her probation this Court also ordered Judge Ballentine to report to the Judicial Conduct Board on a monthly basis and directed the Judicial Conduct Board to file a monthly written probation report with the Court.

8. The Judicial Conduct Board filed probation reports with the Court on a monthly basis from July 8, 2013 through January 8, 2014, at which time the Judicial

Conduct Board Chief Counsel decreased the frequency of the probation reporting meeting to every other month. Thereafter, the Board submitted a report to the Court in March, May, July, September and October 2014. Board Chief Counsel cancelled the November, 2014 probation reporting meeting because of the Judicial Conduct Board's decision to file a probation revocation case.

9. Judge Ballentine presided over criminal cases in December 2010 and October 2012 against defendants charged with making sales of taxable goods without a license, failure to file tax returns and failure to remit taxes on the sale of goods.

10. Prior to and during the pendency of Judge Ballentine's term of probation, the Board investigated a complaint that Judge Ballentine engaged in judicial misconduct in the operation of a retail business, Walk–In–Style Fashion Footwear, 356 North Queen Street, Lancaster, Pennsylvania, which she owned and operated from 2009 to 2014. Walk–In–Style Footwear had not filed sales tax returns from 2009 through the second quarter of 2012.

11. On January 25, 2012, as a result of Judge Ballentine's failure to pay sales taxes due and owing on the sale of taxable goods at Walk–In–Style Fashion Footwear, the Pennsylvania Department of Revenue provided notice to Judge Ballentine that her license to sell taxable goods was revoked as of that date.

12. The License Revocation Notice advised Judge Ballentine that she was subject to a criminal citation if she sold taxable goods without a sales tax license.

13. On May 9, 2012, the District Administrator of the Bureau of Collections and Taxpayer Services of the Department of Revenue sent a letter to Judge Ballentine regarding the revocation of her Sales, Use and Hotel Occupancy Tax license and ordered her to surrender the license to the PA Department of Revenue. The letter notified Judge Ballentine that she was prohibited from maintaining a place of business in Pennsylvania for the purpose of selling taxable goods until the revocation was rescinded and her license restored.

14. On September 25, 2012, the PA Department of Revenue issued a Non–Traffic Citation to Judge Ballentine for a summary offense violation of 72 P.S. § 7208(c) which prohibits the offering of taxable goods for sale without possession of a valid sales tax license.

15. On January 31, 2013, Judge Ballentine appeared *pro se* at a Summary Trial before the Honorable Paula P. Correal who denied Judge Ballentine's request for continuance. *Commonwealth v. Kelly S. Ballentine*, Docket No. MJ–02202–NT0000963–2012.

16. Following trial, Senior Magisterial District Judge Correal adjudicated Judge Ballentine guilty of the aforementioned summary offense and sentenced her to fines and costs in the amount of $369.45.

17. On February 1, 2013, Judge Ballentine filed a Notice of Summary Appeal in the Court of Common Pleas of Lancaster County. *Commonwealth v. Kelly S. Ballentine*, Docket No. CP–36–SA–0000023–2013.

18. On October 25, 2013, while represented by Attorney Jerome A. Taylor, Judge Ballentine withdrew her appeal.

19. On October 25, 2013, the Honorable Margaret Miller of the Court of Common Pleas of Lancaster County adjudicated Judge Ballentine guilty of the summary offense of conducting the sale of taxable goods at Walk–In–Style Fashion Footwear without a valid sales license and sentenced her to pay fines and costs.

20. While investigating the complaint of misconduct related to the sales tax case,

by letter dated August 11, 2014, the Judicial Conduct Board inquired of Judge Ballentine whether she filed her individual federal and state tax returns for tax years 2009, 2010, 2011.

21. On August 25, 2014, through her attorney, Samuel C. Stretton, Esquire, Judge Ballentine informed the Judicial Conduct Board that she failed to timely submit her individual federal and state tax returns for tax years 2009, 2010, 2011, 2012 and 2013.

22. In late August, 2014, Judge Ballentine contacted her tax preparer, Juan Galarza of Galarza Income Tax Service, 727 Prince Street, Lancaster, PA 17603 to request that he prepare and file her federal, state and local individual income tax returns for tax years 2009, 2010, 2011, 2012 and 2013.

23. Judge Ballentine's tax records demonstrate that in 2010, 2011, 2012 and 2013, Judge Ballentine timely requested that her tax preparer, Mr. Galarza, file IRS Form No. 4868, Application for Automatic Extension of Time to File U.S. individual Income Tax Return, for tax years 2009, 2010, 2011 and 2012.

24. In April of 2010, 2011, 2012 and 2013, Mr. Galarza timely filed IRS Form No. 4868 for six month extensions of time to file Magisterial District Judge Ballentine's federal individual income tax returns for tax years 2009, 2010, 2011 and 2012.

25. By timely filing of IRS Form 4868, the time to file Judge Ballentine's federal individual income tax returns was extended six months from the April due dates to the new October due dates for tax years 2009, 2010, 2011 and 2012.

26. By her timely fifing of IRS Form 4868, the Pennsylvania Department of Revenue automatically granted Judge Ballentine six month extensions of time to file her state income tax returns for tax years 2009, 2010, 2011 and 2012.

27. Despite the six month extensions of time to file the tax returns, Judge Ballentine failed to timely file her federal, state and local individual income tax returns for tax years 2009, 2010, 2011 and 2012.

28. On or before April 15, 2014, the statutory deadline for the filing of U.S. Individual Income Tax returns for IRS Form 4868 seeking an extension of the deadline, Judge Ballentine who was then serving her probation did not contact Mr. Galarza to request that he file IRS Form 4868 for an extension of time to file her 2013 federal individual income tax return.

29. On or before April 15, 2014, Mr. Galarza did not file IRS Form 4868 to request a six month extension of time to file Judge Ballentine's 2013 individual federal income tax returns, nor submit to the Pennsylvania Department of Revenue a request for an extension of time to file Judge Ballentine's individual state income tax returns.

30. On August 28 and 29, 2014, Judge Ballentine delivered her tax records, in part, for tax years 2009, 2010, 2011, 2012 and 2013 to Mr. Galarza.

31. Prior to a September 27, 2014, appointment with Mr. Galarza, Judge Ballentine delivered additional tax records for tax years 2009, 2010, 2011, 2012 and 2013 to Galarza Income Tax Service.

32. On September 27, 2014, Mr. Galarza met with Judge Ballentine and prepared her tax returns for tax years 2009, 2010 and 2011.

33. On September 27, 2014, Judge Ballentine signed and dated her 2009, 2010 and 2011 federal, state and local individual income tax returns, prepared by Mr. Galarza.

34. On October 15, 2014, Mr. Galarza prepared Judge Ballentine's 2012 and 2013 federal, state and local individual income tax returns.

35. On October 15, 2014, Judge Ballentine signed and dated her 2012 and 2013 federal, state and local individual income tax returns as prepared by Mr. Galarza.

36. According to IRS Account Transcripts dated October 31, 2014, the IRS received Judge Ballentine's 2010 federal tax return on October 28, 2014, and received her 2011 federal tax return on October 8, 2014. The 2009, 2012 and 2013 tax returns were not yet listed as received by the IRS.

37. Judge Ballentine timely paid taxes that she owed for years 2009, 2010, 2011, 2012 and 2013 to the federal, state and local governments solely through the withholding of tax moneys from her paycheck by the Administrative Office of Pennsylvania Courts.

38. During her Court of Judicial Discipline probation period beginning on June 1, 2013 and scheduled to end on December 31, 2014, Judge Ballentine failed to timely file her federal, state and local individual income tax returns for tax years 2009, 2010, 2011, 2012 and 2013 until after August 11, 2014, when the Board formally questioned her on the subject.

39. Judge Ballentine knew that federal tax law required her to timely file her federal individual income tax returns for tax years 2009, 2010, 2011, 2012 and 2013.

40. By her conduct of failing to file her federal income tax returns for 2009, 2010, 2011, 2012 and 2013, Judge Ballentine failed to comply with the Internal Revenue Code at 26 USCA § 7203 in each of the five years when she was required to, yet failed to file a federal individual income tax return.

41. Judge Ballentine knew that Pennsylvania law required her to timely file her individual income tax returns for tax years 2009, 2010, 2011, 2012 and 2013.

42. By her conduct in failing to timely file her Pennsylvania individual income tax returns for tax years 2009, 2010, 2011, 2012 and 2013, Judge Ballentine failed to comply with the Pennsylvania Tax Reform Code at 72 P.S. § 7353 in each of the five years when she was required to, yet failed to file a Pennsylvania individual income tax return.

43. By her conduct in failing to file her 2012 federal and state tax returns by the extended due date of October 15, 2013, Judge Ballentine failed to comply with the law and with her conditions of probation.

44. By her conduct in failing to file her 2013 federal and state tax returns by the due date of April 15, 2014, Judge Ballentine failed to comply with the law and with her conditions of probation.

45. At the combined hearing held on February 5, 2015, which encompassed the probation violation allegations, the new complaint and sanctions. Judge Ballentine admitted that she did not file her taxes by the dates required. (Transcript at 34–37.)

46. Concerning her failure to file and pay the sales tax collected on behalf of the Commonwealth, Judge Ballentine testified as follows:

Q. After your cousin left the store, did your mother or did you assume the _____ for the fiscal responsibility for the shop?

A. I always was the financial person responsible for the store.

Q. So, why didn't you file the sale tax returns? Even though apparently it was only limited sales, why didn't you file?

A. Again, there was no real reason why they were not filed. (Transcript at 44–45).

47. Judge Ballentine also testified that the amount of sales tax she failed to remit to the Commonwealth was relatively small "I don't know there was I think like $14 here and $15 per quarter. I'm not sure what the highest amount was, but there was never a substantial amount because there were never any substantial sales at the shoe store." (Transcript at 49).

48. Judge Ballentine testified that the total amount of unremitted sales tax was approximately "$130 or something like that." (Transcript at 73).

## III. *DISCUSSION*

Concerning the accusation that Judge Ballentine violated her probation we note that the first condition of that probation was that she not engage in any activity prohibited by law. Judge Ballentine violated this condition by failing to timely file her federal and state personal income and sales tax returns, failing to remit sales taxes for her business, continuing a business when its license to operate had been revoked and for being convicted of a summary offense. We find that Judge Ballentine is also in violation of the very similar allegations of the new Complaint considered here.

The Complaint filed against Judge Ballentine includes three counts. We find Judge Ballentine violated all three counts. *Count 1.*

■ The first count of the complaint alleges a violation of Rule 2A of the Rules Governing Standards of Conduct of Magisterial District Judges (effective through November 30, 2014).

Rule 2A provides in part:

Judges should respect and comply with the law and should conduct themselves at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

Under both the Federal Tax Code and the Pennsylvania tax laws, the failure to file a tax return is a criminal act, graded as a misdemeanor.

The Internal Revenue Code at 26 U.S.C.A. § 7203 provides:

Any person required under this title to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return, keep and records or supply any information, who willfully fails to pay such estimated tax or tax, make such return, keep such records or supply such information, at the time or times required by law or regulations, shall in addition to other penalties provided by law, be guilty of misdemeanor and upon of conviction thereof, shall be fined not more than $25,000 ($100,000 in the case of a corporation), or imprisoned not more than 1 year or both, together with the costs of prosecution.

Pursuant to the Internal Revenue Code at 26 U.S.C.A. § 7203, the failure to file federal individual income tax returns is a federal misdemeanor.

The Pennsylvania Tax Reform Code of 1971 at 72 P.S. § 7535(c) provides:

Any person required under this article to pay any tax or to make a return; keep any records or supply any information, who wil[l]fully fails to pay such tax or make such return, keep such records or supply such information at the time or times required by law or regulations, shall, in addition to other penalties provide by law, be guilty of a misdemeanor and shall, upon conviction, be sentenced to pay a fine not exceeding five thousand dollars ($5,000), or to undergo imprisonment not exceeding two years, or both.

Pursuant to Pennsylvania Tax Reform Code of 1971 at 72 P.S. § 7535(c), the failure to file Pennsylvania individual income tax returns is a misdemeanor.

■ The decision in *In re Carney*, 621 Pa. 476, 79 A.3d 490 (2013) (decided October 30, 2013) establishes that a judge is to behave lawfully and properly *all* the time and not just in the course of his or her judicial duties. Judge Ballentine violated this requirement.

After the decision in *Carney* and while already on probation, Judge Ballentine failed to timely file her 2013 individual income taxes on or before April 15, 2014 and thereby violated federal and state law.

Judge Ballentine's continuing conduct in failing to file prior tax returns and remit collected sales tax similarly violated Rule 2A and the doctrine established in *Carney* that a judge must comply with the law whether or not their conduct implicates the judicial decision making process.

By her conduct as described above, Judge Ballentine has failed to conduct herself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

*Count 2.*

■ In Count 2 of the Complaint Judge Ballentine is accused of violating Article V, § 17(b) of the Pennsylvania Constitution.

In pertinent part, Article V, § 17(b) provides:

Justices of the peace [magisterial district judges] shall be governed by rules or canons which shall be prescribed by the Supreme Court.

A violation of the Rules Governing Standards of Conduct of Magisterial District Judges is an automatic derivative violation of Article V, § 17(b).

Accordingly, Judge Ballentine violated Article V, § 17(b) as a direct result of her violation of Rule 2A of the Rules Governing Standards of Conduct of Magisterial District Judge as set forth above.

*Count 3.*

■ In the third Count of the Complaint Judge Ballentine is accused of violating the Disrepute Clause of Article V, § 18(d)(1) of the Pennsylvania Constitution.

Article V, § 18(d)(1) prohibits a judge from engaging in conduct which brings disrepute upon the judicial office itself and provides in part:

A justice, judge or justice of the peace [magisterial district judge] may be suspended, removed from office or otherwise disciplined for ... conduct which ... brings the judicial office into disrepute, whether or not the conduct occurred while *acting in a judicial capacity* or is prohibited by law.

■ In order to find that a judge has brought the judiciary into disrepute the evidence must establish: 1) the judicial officer has engaged in conduct so extreme that 2) it has resulted in bringing the judicial office into disrepute. Disrepute is established by proof that an act or series of acts by a judge result in a decline in the esteem of the public for the judicial office. *In re Smith*, 687 A.2d 1229, 1238 (Pa.Ct. Jud.Disc.1996).

In our opinion in *In re Cicchetti*, 697 A.2d 297 (Pa.Ct.Jud.Disc.1997) we stated that:

The determination of whether particular conduct has brought the judicial office into disrepute, of necessity, is a determination which must be made on a case by case basis as the particular conduct in each case is scrutinized and weighed. *Id.* at 312.

Many aspects of the conduct of Judge Ballentine arguably amount to causing disrepute even when viewed singly.

The hypocrisy inherent in judging others for tax violations while she herself was committing those same violations certainly contributes to causing disrepute. Similarly failing to file personal income taxes including the forms due on April 15, 2014, while she was on active probation contributes to bringing the judiciary into disrepute.

As a result of the cumulative effect of the matters discussed above and of:

Judge Ballentine's October 25, 2013, conviction for the summary criminal offense of conducting sales without a license at Walk–In–Style Fashion Footwear;

Judge Ballentine's failure to timely file tax returns for Walk–In–Style Fashion Footwear for tax years 2009, 2010, 2011 and the first two quarters of 2012;

Judge Ballentine's failure to timely remit the sales tax collected by Walk–In–Style Fashion Footwear;

Judge Ballentine's failure to timely file individual federal income tax returns for tax years 2009, 2010, 2011, 2012 and 2013; and

Judge Ballentine's failure to timely file Pennsylvania individual income tax returns for tax years 2009, 2010, 2011, 2012 and 2013, we find that Judge Ballentine engaged in a pattern of conduct so extreme as to bring disrepute upon the judicial office itself in violation of the Disrepute Clause of Article V, § 18(d)(1).

## IV. FINDINGS OF LAW

1. The Board has established by clear and convincing evidence that Judge Ballentine's conduct violated the probation imposed on her on June 10, 2013.

2. The Board has established by clear and convincing evidence that Judge Ballentine's conduct is in violation of Rule 2A of the Rules Governing Standards of Conduct of Magisterial District Judges.

3. The Board has established by clear and convincing evidence that Judge Ballentine's conduct violated Article V, § 17(b) of the Pennsylvania Constitution.

4. The Board has established by clear and convincing evidence that Judge Ballentine's conduct is such that brings the judicial office into disrepute in violation of Article V, § 18(d)(1) of the Pennsylvania Constitution.

5. Judge Ballentine is subject to discipline under Article V, Section 18(d)(1) of the Pennsylvania Constitution.

## V. SANCTION

■ Because this is a combined hearing on the probation violation, the new Complaint, and the appropriate sanction for each, we are to consider what the appropriate remedy is for all of Judge Ballentine's cumulative misbehavior.

We are to consider what is the appropriate sanction for conduct involving a judge dismissing several of her own tickets, not filing state and federal taxes for five years, failing to remit approximately $130 in sales tax that rightfully belonged to the Commonwealth, operating a business without a license and pleading guilty to three misdemeanors (for dismissing traffic tickets) and one summary offense (the business license violation). The cumulative effect of all this misconduct over a period of years mandates a severe sanction. Our conclusion here is that removal from judicial office is warranted.

Judge Clement files a dissenting opinion in which Judge Mullen and Judge Shrager join.

## ORDER

AND NOW, this 4th day of August, 2015, it is HEREBY ORDERED that Magisterial District Judge Kelly S. Ballentine of Lancaster County is hereby REMOVED from office.

## DISSENTING OPINION BY JUDGE CLEMENT

I respectfully dissent from the majority, first in the analysis, but also particularly in the sanction of "removal" that they impose. Let it be noted that none of the current allegations against Judge Kelly S. Ballentine involve her behavior in the courtroom during the time of probation. By all accounts, this Respondent runs an orderly and proper court, while administering justice fairly.

Without a complete reiteration of the majority's Findings of Fact, in reviewing the chronology of events and the body of law surrounding Judge Ballentine, it should be recognized that the summary offense to which she pleaded guilty, 72 P.S. § 7208(c), which prohibits the offering of taxable goods for sale without possession of a valid sales tax license, *predates* by several months the May 17, 2013 hearing on the Judicial Conduct Board's ("Board") Petition to Suspend. The Court of Judicial Discipline ("Court") issued an Order on May 28, 2013, which granted the Board's petition for suspension without pay, followed by the Court's Order of June 10, 2013 imposing sanctions upon the Respondent.[1] The rationale and justification are contained therein and need not be revisited. Respondent was placed on probation until December 31, 2014, and monitored by the Board.

In the ensuing months, the Board provided monthly, and eventually bi-monthly, probation reports to the Court which ad-

vised that they had not received any actionable or substantiated complaints of misconduct regarding Judge Ballentine since her return to the bench. In total, the Board consistently highlighted compliance with the conditions of Judge Ballentine's probation.

The majority conclude that Judge Ballentine violated Article V, Section 18 and brought disrepute upon the judiciary. This dissent states why I disagree with the finding of disrepute.

Our Supreme Court, in the case of *In re Carney*, 79 A.3d 490, 621 Pa. 476 (2013), reversed a decision of this Court where we had followed Supreme Court precedent that off the bench conduct could not constitute Rule 2A violations. The contours of this change are well known to Pennsylvania jurists—the bright line distinction establishes that Rule 2A violations are no longer limited to on the bench conduct, and, since the *Carney* case conduct outside of the judicial decision-making process can now provide the basis for a Rule 2A violation. Significantly, a close review of *Carney* reveals that in this unanimous decision the Supreme Court carefully circumscribed the reach of this changing standard when it noted that under prior precedent Judge Carney had not been placed on notice that off the bench conduct could constitute a violation of Rule 2A.

> Judicial disciplinary proceedings are quasi-criminal in nature; and judges must be afforded the same constitutional rights as criminal defendants, which would necessarily include notice as to what type of conduct is prohibited, consistent with due process. . . . [A]ppellee's conduct was not violative of Rule 2A at the time it was committed because it did not involve the judicial decision-making process. Thus, Appellee was not on no-

---

1. *In re Kelly S. Ballentine,* 86 A.3d 958 (Pa.Ct. Jud.Disc.2013).

tice that such conduct violated Rule 2A. Nor was he on notice that he could be sanctioned for such conduct. *See, Collins v. Youngblood*, 497 U.S. 37, 43, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990) (original understanding of U.S. Constitution, prohibiting passage of *ex post facto* laws, provided that Legislatures could not retroactively alter definition of crimes or increase punishment for criminal acts).

\* \* \* \*

Accordingly, there is no need to remand this case for further proceedings and our corrective holding respecting *Cicchetti* and *Harrington* will have prospective effect.

*In re Carney*, 79 A.3d 490, 508. (Internal citations omitted).

I believe that our Supreme Court has plainly stated that we may not consider off the bench conduct occurring prior to October 30, 2013, in determining that a jurist has violated Rule 2A. It is evident then, that it is error to consider any of Judge Ballentine's conduct which predates this fundamental shift of the *Carney* decision in reaching a conclusion that she violated Rule 2A. The majority bases its conclusions, in no small part, upon such conduct.

When Judge Ballentine's pre-Carney conduct is stripped from the list of reasons upon which the majority relies to reach the sanction of removal, there is precious little left to warrant such a severe sanction.

For instance, Judge Ballentine's conduct which resulted in a summary citation for a violation of the provision of the Tax Reform Code of 1971, 72 P.S. § 7208(c) (requiring places of business must have valid sales tax license) occurred during 2012, culminating in the disposition of her summary appeal on October 25, 2013. But the Supreme Court did not decide the *Carney* case until five days *later*, on October 30, 2013. Thus, at the time the citation was

issued to her, at the time of the Board investigation, at the time of the hearing before this Court, and at the time that Judge Ballentine pleaded guilty to this summary violation, under the established law of our Commonwealth it had no bearing on what might—or might not—be a violation of Rule 2A.

Even if this pre-Carney conduct were appropriate to consider against Judge Ballentine (although I conclude it cannot be properly considered), because it involved a summary offense and occurred prior to the probationary period, it does not rise to the level of egregiousness which warrants the removal of a judicial officer duly elected by the voters of her magisterial district.

The notion of hypocrisy that the majority advances with regard to Judge Ballentine presiding over a 2010 and a 2012 allegation prohibiting the offering of taxable goods for sale without a valid sales tax license is dispelled when one considers that Ballentine, in her case; exercised her right to plead not guilty; was denied a continuance; was convicted of the summary violation; exercised her right to file an appeal; and, eventually withdrew her appeal and promptly paid the assessed fine and court costs. In this regard, all judges must actuate a self-analysis for recusals. Besides, Ballentine's President Judge did not exercise his supervisory authority barring her from handling such matters. I suppose the only value in mentioning these two hearings is that each should have served as an alert to this absentee business owner.

Additionally, the majority considers the failure of Judge Ballentine to file state and federal income tax returns for the years 2009, 2010, 2011, 2012, 2013. In response to an inquiry from the board on this subject, Judge Ballentine cooperated and answered forthrightly. She would have also been within her rights to decline to answer. Again, however, any Rule 2A viola-

tion premised upon these facts is improper because it exceeds the permissible scope of what is permitted under *Carney,* [2]

Furthermore, the self-reported, readily remedied state and federal tax derelictions resulted in refunds, not charges of tax evasion or fraud. It should be duly noted that, while she did not file in a timely manner, the amounts due to the state and federal governments were properly withheld each month from Ballentine's salary. Judge Ballentine's lack of diligence was hurting only herself, in that she eventually received sizeable refunds totaling $18,388. [Make no mistake, it would be far more difficult to dissent if the prevailing issue was tax evasion or tax fraud.]

Finally, a review of all of this Court's prior cases resulting in removing a judge from office reveals what is missing from the instant case. The level of egregiousness, or shocking conduct, here in no way rises to such a magnitude. Judge Ballentine's conduct might be described as negligent, or reckless.[3] However, instances of this Court imposing its ultimate sanction—removal from the public office to which the judge has been duly elected by the electors of his or her jurisdiction—is more properly reserved for intentional misconduct.

While I have previously concluded, along with my colleagues in the majority, that Judge Ballentine did violate her probation, in so reaching this conclusion it is evident that the basis for a violation can only be her failure to file her 2012 tax returns by the extended due date, and her failing to file her 2013 tax returns by April 15, 2014. I do not believe this, standing alone as it must under the well-defined, pivotal limitations of *Carney,* rises to the level of warranting removal. I also conclude that although she did violate her probation by failing to comply with the law, these events viewed alone do not merit a reconsideration of the original sanction of probation because they cannot be violations of Rule 2A, nor can they be derivative violations of Section 17(b) of the Pennsylvania Constitution. I also do not believe that the late filing of two years of income tax returns which result in refunds of a judge-taxpayer's withheld funds constitutes a violation of Article V, § 18(d)(1) which brings disrepute upon the judicial office itself.

Accordingly, for the foregoing reasons I cannot join my colleagues on the majority. After giving careful consideration to the prior decisions of this Court, and to the guidance of our Supreme Court as expressed in their resounding pronouncement and unanimous decision in *Carney,* I would not consider Judge Ballentine's off the bench conduct prior to October 30, 2013, in arriving at an appropriate sanc-

**2.** Of course, the Board would have been unlikely to have learned that Judge Ballentine had not filed income tax returns without her own response. This is because such information is confidential and not a matter of public record in the same way that the private income tax records of a candidate for President of the United States of America become public only if he or she chooses to release such information. By making this inquiry, the Board sought to go beyond facts that are a matter of public record and into those that are generally considered highly personal.

**3.** Considering Judge Ballentine's conduct in the established paradigm of judicial discipline, what is missing here is that the conduct

which constitutes the probation violation was not: to exploit her position to satisfy personal desires; involving dishonest acts or moral turpitude; was not motivated by personal profit; and did not prejudice the administration of justice. Judge Ballentine acknowledged the misconduct, cooperated and was candid and forthcoming with the Board; and did not attempt to blame it on others or advance a contrived or unlikely defense. Given her reputation in her community, evidenced by her re-election while the original misconduct charges were pending, and her record of service to the community, removal seems out of scale with the cases where this Court has imposed a sanction of removal.

tion. Instead, I would impose a period of suspension.

Simply put, if *Carney* cannot be held responsible for pre-Carney behavior, how can Ballentine? The responsibility of this Court is to act on the facts presented and the prevailing body of law, not a reach back that disturbs what had already been decided. Removal refutes logic.

In the sum total, I acknowledge that Judge Ballentine has demonstrated inattentiveness and a degree of negligence in her personal and non-judicial business affairs. This does not rise to a degree that brings Pennsylvania's judiciary into disrepute.

It would be remiss not to share that in light of what we do *not* have I also strongly believe that this judge's community deserves a voice on this matter. It would be appropriate and consistent with our system of governance to let her district weigh-in one way or another. After all, this judge's level within Pennsylvania's Unified Judicial System is the only rung subjected to contested elections for subsequent terms.

Judge Mullen and Judge Shrager join in this dissenting opinion.

